CASE 99—ACTION BY FARMER & DAVIS AGAINST W. H. CARSEY & Co. TO ENFORCE A MORTGAGE LIEN ON LAND.—MARCH 9.

# W. H. Carsey & Co. v. Farmer & Davis.

APPEAL FROM CALLOWAY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL. REVERSED.

FACTORS— ADVANCES— CONTRACTS— ESTABLISHMENT— SUFFICIENCY — BREACH—DAMAGES—PROFITS.

Held: 1. In an action by plaintiffs for a balance due for money advanced to defendants with which to purchase tobacco to ship to plaintiffs for sale, evidence HELD insufficient to sustain

W. H. Carsey & Co. v. Farmer & Davis.

an alleged counterclaim for plaintiffs' failure to account for all tobacco received and sold.

2. In an action against defendants for a balance due for money advanced to them by plaintiffs, defendants alleged as a counterclaim that plaintiffs had made an agreement to supply defendants with all the money they might need to continue purchasing tobacco to ship to plaintiffs for sale, and had broken the agreement. HELD, that the evidence was insufficient to establish the contract.

3. Profits which defendants might have made had money been advanced to them to buy tobacco were too precarious to constitute an element of damage, the price the tobacco would have been by the time that to be purchased could have been prepared and put on the market being conjectural, and it not appearing that it was worth more than defendants had agreed to pay for it.

4. The breach of an agreement to lend money furnishes no grounds for a recovery of damage for injury to the reputation of the borrower from not getting it.

JOHN K. HENDRICK, ATTORNEY FOR APPELLANTS.

DANCY FORT, H. M. SCALES, W. F. PETERSON, OF COUNSEL.

In this action on a mortgage debt for $433 which is admitted in the answer, a counterclaim or set off for damages is pleaded for $2,780, and judgment asked for the residue $2,347; to some of which claim demurrers were sustained. Under the rule that the pleading should be construed most strongly against the pleader, they simply mean that the appellees seek judgment by way of set off for $702.50 instead of $2,780, less the mortgage debt and interest.

1. The mortgage was executed April 1, 1899, and the judgment filed November 29, 1901, two years, seven months and twenty-eight days after the execution of the mortgage. The court allowed the appellees on their set off $499.73, and after deducting the mortgage debt of $433 without interest, judgment was given to appellees for the difference $66.73, whereas, if interest had been allowed on the mortgage debt there would have been a difference in favor of appellant of $2.27. We submit the court erred in not allowing such interest.

2. We contend that appellants' demurrer should have been sustained to the first and second paragraphs of the answer. The first paragraph seeks to recover damages for profits they "would have made" on 42,000 pounds of tobacco. We claim

that such damages are too remote to sustain an action. Ky. Tob. Assn. v. Ashley, 9 R., 109; Western Union v. Clever, 13 R., 301; Smith v. Same, 83 Ky., 104.

We further submit that there is a total failure of proof on the part of appellees to make out their claim for damages or any portion of it.

LYNN, GREER & RIED, for appellees.

1. We submit that the proof in the case is sufficient to sustain not only the amount allowed appellees by the court, but largely in excess of it.

2. It certainly was in the contemplation of the parties to the contract that the defendants were to be furnished money to pay for the tobacco that they bought, and that the tobacco they would buy with the money would be shipped to the warehouse at Clarksville for sale, and that the defendants would be entitled to the profits on said tobacco, and we therefore insist that such profits are not too remote for recovery in this action.

3. The court had a discretion whether or not to allow interest on appellants' mortgage debt.

## AUTHORITIES CITED.

Lou., St. L. & T. R. R. Co. v. Neafus, 13 R., 951, & Am. & Eng. Ency. (2d ed.), pp. 622, 632, 585, 586; New Market Co. v. Embry, 20 R., 1130; Blood v. Herring, &c., 22 R., 1725; E. & P. R. R. Co. v. Pottinger, 10 Bush, 188; A. & E. Ency. of Law, 16 vol. (2d ed.), p. 1017.

Opinion of the court by JUDGE HOBSON—Reversing.

W. H. Carsey & Co., are tobacco warehousemen at Clarksville, Tenn. Farmer & Davis are tobacco dealers at Murray, Ky. In the year 1899, Farmer & Davis shipped their tobacco to Carsey & Co., the latter making them advances from time to time thereon, to secure which Davis executed to them a mortgage on a tract of land owned by him. When the tobacco was all sold there was a balance, as shown by the books of Carsey & Co., due them from Farmer & Davis of

$433, and, it not having been paid, they instituted this suit to recover the money and enforce the mortgage. The defendants filed an answer in three paragraphs, as follows:

"(1)    The agreement between the plaintiffs and the defendants was that the defendants were to buy tobacco in the country and ship it to the plaintiffs' warehouse in Clarksville, Tenn., to be sold by the plaintiffs for the customary charges, and in consideration of this the plaintiffs agreed that they would from time to time advance to the defendants money with which to pay for the tobacco they so bought, and would keep in their hands a sufficient amount of money to pay for all the tobacco purchased by them which was to be and was shipped to plaintiffs' warehouse; that plaintiffs failed to keep the contract, and refused to furnish the defendants the money to pay for the tobacco purchased by them when they had contracted for 42,000 pounds of tobacco in the country; that by reason of this they were unable to buy the tobacco so contracted for, and lost the profits which they would have made on the 42,000 pounds of tobacco, they being unable to get the money elsewhere; that they contracted for the tobacco at five or six dollars a hundred, and could have made a net profit on it of at least one dollar and a half a hundred; that in addition to this they were at trouble and expense to the amount of $50 in making the contracts with the farmers, and to the amount of $75 in rescinding these contracts when the plaintiffs refused to furnish them the money to pay for the tobacco after it had been contracted for, making in all $820.

"(2)    The defendants shipped to the plaintiffs for sale 111,221 pounds of tobacco, of the value of $8,896, which was sold by the plaintiffs for that sum, but the plaintiffs failed to account to the defendants for at least $1,360 of the purchase price.

"(3)  By reason of the plaintiffs not furnishing the money as agreed, the defendants had been unable to use a barn which they had rented to put the tobacco in, and thus lost. the rent, $100, and they had also been damaged $500 in their reputation as tobacco dealers by their inability to carry out the contracts they had made, by reason of the plaintiffs'. refusal to advance them the money."

All these sums were pleaded as a counterclaim.  The plaintiffs demurred to the answer, and, their demurrer being overruled, filed a reply controverting its allegations. Proof was taken, and on final hearing the court allowed the defendants on their counterclaim $499.73, setting off against this the plaintiffs' debt of $433, and entering judgment in favor of the defendants for $66.73.  The plaintiffs appeal.

While the reply of the plaintiffs is not in the usual form, we think it substantially sufficient as a denial of the allegations of the answer.  The proof is wholly insufficient to warrant the judgment for the defendants on the second. paragraph of the answer, alleging that the plaintiffs had not accounted for the price received for the tobacco which was sold by them on account of the defendants.  The proof by the plaintiffs is unequivocal that all the money received was accounted for, and an itemized statement  of the sales is filed, also an itemized statement of the plaintiffs' account, which is testified to be correct.  There is no contrary evidence except the following:  The defendants state that they weighed the tobacco bought by them from the farmers, and that their scales were correct.  They also show that the weights of the hogsheads as given by the plaintiffs in the reports of their scales were 8,800 pounds less than the weights of the tobacco for which they paid the farmers.  They also show, that they shipped to the plaintiffs 61 hogsheads,

and only 59 hogsheads were reported by the plaintiffs in their account. But it is shown on the cross-examination of the defendants, and not controverted, that two hogsheads of the tobacco shipped in their name was ordered to be sold by them in the name of a customer, W. Adams' and that these hogsheads were reported in Adams' name. It is further shown that the defendants shipped three hogsheads of their tobacco to another warehouse which sold it, and while the weight of these hogsheads is not definitely established by the proof, judging from the weight of the other hogsheads, we think they may be safely put at about 4,800 pounds. This leaves only about 4,000 pounds of deficiency between the weights made by the defendants to the farmers and those made by the warehousemen when the tobacco was sold in Clarksville. The defendants sold during the season, also, 11 hogsheads at another warehouse, and the deficiency of 4,000 pounds must be considered with reference to these hogsheads, as well as those shipped to the plaintiffs. Some of the tobacco was broken twice, not being sold when first offered. It was sold during the summer, and the loss is greater in dry weather than in damp, as the tobacco dries out. The proof warrants the conclusion that a loss of 25 pounds to the hogshead is not an unreasonable allowance on this tobacco. This would make a loss of nearly 2,000 pounds; and if there was this much loss at the warehouse, it would seem reasonable, there was as much loss in the handling and prizing of the tobacco at the defendants' barn. But, however this may be, the proof is satisfactory that the plaintiffs accounted for all the money they received for the tobacco, and there is nothing in the evidence to warrant a judgment against them for anything beyond the money they received.

The other two paragraphs of the answer will be considered together, as they both depend upon the allegation that the plaintiffs agreed to make advances and broke the agreement. The only proof of the agreement is the evidence of the defendant Farmer as to a conversation between him and the plaintiff W. H. Carsey, which is denied by Carsey. Both the conduct of the parties and the circumstances sustain Carsey, and, while we are satisfied it was contemplated and understood between the parties that Carsey & Co., would make advances to the defendants, we are also satisfied that it was understood they were to do this only as long as things were satisfactory. When Carsey & Co., refused to make further advances, the defendants had fallen behind, and their attention was called to the condition of their account. Carsey & Co., can not be held, under the loose evidence in this record, to have agreed to continue to make advances after the defendants fell behind. They were not satisfied with the way things were going. The defendants had the right to terminate the arrangement with Carsey & Co., and it is hard to conceive that the parties contemplated that Carsey & Co., were compelled to furnish money when the defendants did not keep up their account. There was no writing evidencing the contract. There is nothing in the letters between the parties sustaining in any degree the defendants' contention. When Carsey & Co., informed them that no further advances would be made in view of the condition of the account, no complaint was made that the plaintiffs were breaking any contract, and nothing was said about the contract now relied on. A few months later one of the defendants wrote Carsey & Co., telling him that he and his partner had dissolved, but he was going to carry on the business, and asking them to make advances to him, but making no

complaint of any mistreatment in the past. When Carsey & Co., sent an attorney to Murray to get a settlement of their account, the only objection made by either of the defendants was the alleged shortage in the weights, and it was agreed that, if the weights were shown to be correct by the buyers who had gotten the tobacco, the defendants would settle. The attorney returned a second time, after getting certificates from the buyers as to the correctness of the weights, and still nothing was said about any agreement to make advances which had been broken by Carsey & Co. This claim was never set up until after the suit was brought, and can not be maintained.

Besides, whether the defendants would have made a profit on the 42,000 pounds of tobacco which they had contracted for, if Carsey & Co., had advanced the money to pay for it, would depend on whether or not tobacco advanced or declined in price in the interim before it could be prized and put on the market. It appears from the evidence that the defendants lost money on the tobacco they did buy and ship, and if the 42,000 pounds was sold at the prices got for the other there would have been no profit. What the price of tobacco would have been when this 42,000 pounds was prized and put on the market was entirely conjectural. The price might have been so low as to entail a great loss. Profits which the defendants might have made if the money had been advanced are too precarious to constitute an element of damage. Kentucky Tobacco Association v. Ashby, 9 Ky. Law Rep., 109. The cases relied on for appellees are essentially different, for there the profits or gain might be reasonably estimated, but here there is no basis for estimating the profits, except the unknown contingencies of the future. It is not alleged or shown that the defendants had contracted for the

tobacco at less than its market price, or that it was at the time worth any more than they had agreed to pay for it. The breach of an agreement to lend money furnishes no grounds for a recovery of damages for injury to the reputation of the borrower from not getting it. On the whole case, we conclude that no allowance should be made on account of any part of the counterclaim, and that judgment should be entered for the plaintiffs for their debt and the enforcement of their mortgage.

Judgment reversed, and cause remanded for a judgment as herein indicated.