# Klein v. Citizens Union Nat. Bank.

### Jan. 16, 1940

Watson Clay for appellant.

Leo T. Wolford, Eugene B. Cochran and Bruce & Bullitt for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Junius C. Klein brought an action against the Citizens Union National Bank to recover $92,000 for the breach of an alleged oral agreement by the bank to loan him the full purchase price of 4,000 shares of American Radiator and Standard Sanitary Corporation stock. At the conclusion of all the evidence, the defendant's motion for a directed verdict in its favor was sustained, and, from the judgment dismissing his petition, the plaintiff has appealed.

In 1929 Klein borrowed from the Citizens Union National Bank $50,000 and executed and delivered to it his note for that amount, due on demand, and deposited with the bank as collateral to secure the indebtedness, 3,700 shares of American Radiator and Standard Sanitary Corporation stock worth, at the time, more than $100,000. He later borrowed $15,000 from the bank and executed a demand note secured by collateral. On June 6, 1931, his indebtedness to the bank amounted to $65,000 and was secured by collateral worth approximately $75,000. The notes were renewed from time to time.

and the amount of the indebtedness remained approximately the same, that is, $65,000 until September 15, 1932, when 2,000 shares of American Radiator and Standard Sanitary Corporation stock, held as collateral, were sold for $22,715 and the proceeds applied on the debt. On September 29, 1932, Klein assigned to the bank his savings account, amounting to $3,964.55, to be applied on his indebtedness. This reduced the principal of the notes to $37,811.61. On December 8, 1932, he executed a demand note for $670 secured by 100 shares of American Radiator and Standard Sanitary Corporation stock. His indebtedness to the bank was liquidated on January 3, 1936. It then amounted to $39,148.62. Due to the depression and the rapid decline in the market value of securities, the bank, as it had the right to do under the terms of the loan, called for additional collateral from time to time. Klein did put up additional collateral. According to the record, he finally delivered to the bank, as collateral on the loan, all the securities owned by him. Notwithstanding this, the collateral was worth less than the amount of the debt during the entire time from September 25, 1931, to April 6, 1933, except for a brief interval. During much of that time the collateral was worth less than half the amount of the debt. Klein alleged in his petition and testified that, after the sale of the 2,000 shares of American Radiator and Standard Sanitary Corporation stock for $22,715, the bank agreed that if he would permit this sum and the sum of $3,964.55, then on deposit in his savings account, to be applied as a credit on his indebtedness to the bank, it would advance funds as needed on new notes executed by the plaintiff for the purchase of American Radiator and Standard Sanitary Corporation stock to the extent of the credit then taken on plaintiff's indebtedness to the bank; that is, $26,679.55. In the early part of December, 1932, the market value of American Radiator and Standard Sanitary Corporation stock declined to $6.50 a share. The market value of the stock fluctuated greatly during the next few years, and on February 3, 1937, it sold for $29.50 a share. It is appellant's contention that, under his alleged agreement with the bank, he could have purchased 4,000 shares in December, 1932, with the $26,679.55, which he claims the bank agreed to lend him and would have sold it for $29.50 a share in 1937, which would have made him a profit of $92,000.

The trial judge, in sustaining the defendant's motion for a peremptory instruction, based his decision on three grounds: (1) The alleged agreement of the Citizens Union National Bank to loan money to Klein for speculation was ultra vires; (2) there was no consideration for the bank's alleged oral promise to loan additional money to Klein; and (3) the damages were too speculative to be recoverable.

The appellee insists that all of the grounds assigned by the trial court for directing a verdict in appellee's favor are sound, and furthermore, that the directed verdict was justified because the alleged agreement (1) lacked mutuality, and (2) was too indefinite to be enforceable. It is appellant's contention that, by an agreement between the bank and him, the bank obligated itself to advance funds for the purchase of a designated stock at a designated price; that appellant relied upon such agreement; that the bank repudiated its promise; and the appellant suffered a definitely ascertainable loss as a direct result thereof. Conceding for present purposes that the alleged agreement was not ultra vires and was supported by sufficient consideration, the evidence as to the terms and conditions of the loan, which appellant claims the bank agreed to make, is too vague and indefinite to establish an enforceable contract or to furnish a basis for estimating the profits appellant would have realized if a loan had been made. The terms and conditions of the agreement, if any, must be spelled out of appellant's testimony. We find from his testimony that he was heavily indebted to the bank in September, 1931, and that the value of the securities deposited as collateral to secure the indebtedness was insufficient for that purpose. The market value of the collateral continued to decline, and he had no other securities to deposit. He had difficulty in meeting his interest payments, and was continually asking the bank for indulgence in this respect. The bank was concerned as to the safety of the loan, and, from time to time, requested him to consent to a sale of a part of the collateral that the proceeds might be applied on the principal, although by the terms of the loan it had the right to sell the collateral at any time without his consent. He was an old and valued depositor and customer of the bank, and it is obvious that the bank went to extreme lengths in an effort to meet his wishes and to accommodate him.

In September, 1932, 2,000 shares of American Radiator and Standard Sanitary Corporation stock, held as collateral by the bank, were sold for $22,715. Appellant testified that it was agreed that this sum should be deposited to his account in the savings department of the bank but should be held by it as security on the loan, but that, in violation of this agreement, the bank applied it as a credit on the notes. Thereafter, he acquiesced in this arrangement, and also assigned to the bank his savings account to be credited on the notes. He testified that Mr. W. R. Cobb, vice-president of the bank, agreed at that time to advance funds later sufficient to purchase 2,000 shares of American Radiator and Standard Sanitary Corporation stock at $7 a share. Within two months thereafter the market value of the stock declined to $7 a share, and appellant claims that the bank refused to perform its part of the agreement although he was ready and willing to execute the necessary notes, purchase the stock and deposit it with the bank as collateral on the new notes. Mr. Cobb denied that such an agreement was made. However, conceding as we must in considering the propriety of the court's action in giving the peremptory instruction that appellant's recollection of what transpired is correct, still the evidence is not sufficient to establish an enforceable contract. The terms and conditions are not sufficiently definite to enable the court to determine therefrom the measure of damages in the case of a breach. Appellant's testimony concerning the terms of the alleged agreement is nebulous and indefinite. The exact amount of the loan and the time within which it should be made were not specified, and whether demand notes were to be executed or notes with definite maturities does not appear. It must be assumed that if the bank agreed to advance funds to appellant, it was understood that any notes executed by him would be secured in accordance with good banking practices.

On December 29, 1932, appellant wrote to the Citizens Union National Bank requesting it to loan him the funds necessary to repurchase the 2,000 shares of American Radiator and Standard Sanitary Corporation stock which had been sold in September, 1932. His indebtedness to the bank then amounted to $38,481.61, and the market value of his collateral was only $29,469.75. Mr. Cobb, vice president of the bank, wrote to him in reply

on December 30, 1932: "Your loan with us is in such shape that we do not desire to permit an increased indebtedness to allow you to buy any additional A. D. T. stock."

The market value of American Radiator and Standard Sanitary Corporation stock continued to decline until March 1, 1933, when it sold for 4⅞, a decline of 30 per cent. from the price at which appellant desired to purchase it in December, 1932. If the bank had advanced funds to appellant in December, 1932, and the stock purchased with the proceeds of the loan had been deposited as collateral on demand notes, the bank would have had the right to sell the collateral at any time and, no doubt, it would have exercised this right in order to protect itself from further loss, and, instead of making a profit, appellant would have suffered a loss on the transaction. There were too many contingencies surrounding the transaction to enable the court to estimate the profits with any degree of certainty. The agreement, as outlined in appellant's testimony, is too vague and indefinite for enforcement. W. H. Carsey & Co. v. Farmer & Davis, 117 Ky. 826, 79 S. W. 245, 25 Ky. Law Rep. 1965.

"An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." 1 Restatement of the Law of Contracts, Section 32.

To hold the appellee responsible for speculative damages in this case would be a dangerous innovation upon the rule of reasonable certainty.

The judgment is affirmed.