**PYE et al. v. CARDWELL.   (No. 6864.)**

(Court of Civil Appeals of Texas. Galveston. May 13, 1915. Rehearing Denied Oct. 7, 1920.)

**1. Malicious prosecution ⚖11—Merely filing suits not actionable.**

The mere filing of a civil action and the issuance of citation to defendant, even though maliciously and without probable cause, is not a tort which gives a right of action for damages; nor does the repeated filing of such actions in different jurisdictions for the same cause of action, and their dismissal when defendant appeared to defend, give such right of action.

**2. Conspiracy ⚖2—Conduct not actionable merely because two or more act jointly.**

The fact that two or more persons join in an action does not make the action actionable, if it was not actionable in itself.

**3. Appeal and error ⚖1177(4)—Case will not be remanded, if facts show no cause of action could be stated.**

On reversing a judgment for error in overruling a demurrer to the petition, the cause will not be remanded, where the undisputed facts show that there was no cause of action which could be stated by an amended petition.

Appeal from Galveston County Court; George E. Mann, Judge.

Action by Margaret Cardwell against B. F. Pye and others. Judgment for plaintiff, and defendants appeal. Reversed, and judgment rendered for defendants. Rehearing denied, in conformity to answers to certified questions by Supreme Court (222 S. W. 153).

Lipscomb & Lipscomb and B. F. Pye, all of Beaumont, and Lewis Fisher, of Galveston, for appellants.

Geo. G. Clough and Aubrey Fuller, both of Galveston, for appellee.

LANE, J. Appellee brought this suit against appellants, and for cause of action alleges: That on October 8, 1909, she borrowed from defendant Pye the sum of $30, for which she executed her note, to be paid December 1, 1909; that said Pye exacted of her the sum of $15 on said loan in addition to 10 per cent. per annum interest thereon, and said note also provided for the further sum of $25 as attorney's fees, if placed in the hands of an attorney for collection; that before the maturity of said note said Pye claimed to have transferred same to one S. Beck; that said claim of transfer was not in fact made; that she paid to said Pye, through S. Beck, and to the agents and employés of Pye and Beck, on or about the 21st day of December, 1909, the sum of $30, being the principal sum so borrowed by her from said Pye, and that Pye indorsed upon said note,

"Balance due, $29.00"; that, being unable to pay said balance claimed to be due upon demand of S. Beck, she executed and delivered to said Beck her promissory note secured by a mortgage lien upon certain personal property; that she made payment upon said note from time to time in various amounts; that the $30 borrowed from said Pye is the only money she ever borrowed from any of these defendants; that she paid Pye, S. Beck, Beck Loan & Jewelry Company, and Eureka Loan Company the sum of $70, up to and including July 14, 1910, and also a further sum of $25, and on July 14, 1910, said note had long since been fully paid off and satisfied; that on or about the 26th day of August, 1910, defendant L. Perl requested her to call at his office; that she complied with said request, and that said Perl informed her that he understood that she desired to borrow some money, to which she replied that she did not so desire, and thereupon said Perl told her that he understood that she owed S. Beck, or the Beck Loan & Jewelry Company; that she told said Perl that she did not owe said S. Beck, or any of the parties, any money; whereupon Perl went to the place of business of S. Beck, and came back to his store with said Beck, who said to her in a loud voice and angry tone that she did owe him money, and demanded immediate payment thereof, upon threats of taking action in court; and said Perl and Beck, by their action in loudly proclaiming and insisting that she owed S. Beck, coerced and frightened her into making an alleged new loan and note for $46, payable to L. Perl, and to secure the same by a chattel mortgage for an amount unknown to her; that thereafter Perl claimed to have transferred the note given to him to S. Beck, or the Eureka Loan Company, or B. F. Pye, and later said Pye made demand on plaintiff for payment of said $46 note; that, although she was under no obligation to pay said note, she did pay same to S. Beck, L. Perl, B. F. Pye, and E. L. Roberts, operating under the firm name of Eureka Loan Company, on the 29th day of October, 1910, but notwithstanding such payment L. Perl continued to demand the second payment of said note, though he knew the same had been fully paid; that she paid Eureka Loan Company, Beck Loan & Jewelry Company, and New Orleans Loan Company, which are unincorporated concerns, and plaintiff has good reason to believe that the said Perl, Pye, Russell, and Roberts are interested therein, and lend their names, aid, and influence to said business; that in transacting their business said Pye, acting for all, in lending money at usurious rates of interest, uses the names of A. J. Minor and W. T. Fortner; that the said Fortner was, during the year 1910 and 1911, the Galveston manager for the Eureka Loan Company, and was succeeded by T. S. Russell, who is now such manager; that the name of A. J. Minor is used by said Pye, Perl, Russell, and Beck to defeat the jurisdiction of the courts, and to place the money, property, and effects of said loan company beyond the reach of law, by making it impossible to get service upon said Minor, who is alleged by Pye in some instances to be a resident of Jefferson county, Tex., but generally to reside in the state of Louisiana; that plaintiff believes Minor is a fictitious person, and the name of Minor is used by Pye for the purpose of shielding himself and his confederates, defendants herein, from the consequences of having collected unlawful interest.

Plaintiff further alleges that, notwithstanding she had fully paid off and discharged the original loan made to Pye, and all the renewals thereof, which was well known to all of the defendants, they have conspired together and confederated for the purpose of exacting from her additional sums of money, by bringing a multiplicity of suits against her, and in doing so they use the names of W. T. Fortner, T. S. Russell, A. J. Minor, and S. Beck and have sued her in different places for the purpose of worrying and harassing her, in the hope that she will pay their unlawful demands, rather than defend the various suits brought by said Pye as attorney for the various defendants and in his own behalf; that said Pye had instituted seven suits in various jurisdictions against her, and when he learned that she had employed counsel to defend said suits said Pye would dismiss, and bring another suit at a different place; that all of said suits were instituted to unlawfully extort money from her, which defendants knew she did not owe, and for the further purpose of compelling her to pay Pye $20, as attorney's fee, which Pye knew was not due; that these suits have caused her great worry and annoyance and loss of peace of mind; that she has incurred attorney's fees in the sum of more than $50, and that she has been worried, has lost sleep, and suffered physical inconvenience and loss of business as a result of such suits. She prays for $250 actual and $700 exemplary damages, for cancellation of the said $46 note and for general relief.

Defendants demurred generally to the petition and say the same is insufficient in law to require defendants to answer; that it fails to allege or show any cause of action against defendants, or either of them, whatsoever. Defendants also by special plea deny the wrongful acts charged to them by plaintiff's petition and say that all of said suits were brought in good faith upon what they believe to be just demands.

There are 48 pages of the various pleadings, but in view of the conclusions reached by us, and the disposition we shall make of the appeal it is unnecessary to further ex-

tend this already long statement. The case was tried before a jury and a verdict and judgment was rendered and entered for plaintiff for the sum of $250 actual and $700 exemplary damages. Defendants Pye, Russell, and Perl have appealed.

As the disposition we shall make of appellants' second assignment will dispose of all issues presented by this appeal we shall now proceed to consider said assignment, which is as follows:

"The court erred in overruling the general demurrer of these defendants to plaintiff's cause of action as stated in the pleadings upon which the case was tried."

Under this assignment appellants make the following proposition:

"While allegations of extortion by threats of suit and further efforts to extort by bringing suit, under circumstances where nothing but weakness of mind could explain the alleged submission, will always appeal strongly to the charity of court and jury, yet they state no cause of action for damages as for tort, where no force nor fraud is alleged to have been used in the alleged extortion, and no process issued in the suits affecting the person or property of the defendants therein."

[1] The theory of plaintiff's case, as made in her pleadings and her testimony, is that as appellants have brought numerous unwarranted suits against her upon unfounded claims or demands, and that said suits were brought maliciously for the purpose of extorting money from her, she should be permitted to recover from appellants damages incurred by reason of said suits actual and also exemplary damages. The court must be open and every person for injury shall have remedy according to the law of the land. The mere fact that by civil suit a moral duty may have been disregarded, or moral right invaded, and inconvenience suffered or expense incurred in consequence thereof is not sufficient to give rise to an action for tort, where no legal right has been infringed. 38 Cyc. 419. There is not, nor should there be, any legal right in any real or artificial person, to an exemption from civil suits.

"Every one is liable to be harassed and injured in his property and feelings by unfounded suits, but this is not an injury for which he can have legal redress." Smith v. Adams, 27 Tex. 30.

"The courts are usually regarded as institutions where human rights are protected by the most efficient agencies devised by the ingenuity of man. It may sometimes result in actual injury to one to merely cite him to come there as a defendant, but it would be a diabolical irony and paradox which would go to the foundations of all legal remedy to entertain any evidence or argument against the conclusive presumption of law that, where nothing more is done than to cite defendant to appear in court and defend an alleged cause of action, the defendant will have justice done him in that proceeding, so as to leave nothing to complain of on his part in a separate suit. The above maxim says that every person for injury done him shall have remedy, etc., and it must be admitted that because of the frailty and imperfection of all human agencies, injury does sometimes result from merely judicial proceedings, and here lies the opportunity for irony which may perhaps have exerted its subtle influence on the courts of some jurisdictions, but not upon our courts, as will be shown later."

For the very reason that human agencies are imperfect the conclusive legal presumption must be indulged that to merely cite one to appear in court can do him no injury in legal contemplation. It may be that vile charges are made against a defendant, and he be cited to appear away from home amongst strangers, bearing the stigma which bold and unflinching assurance can make even with the baldest and sheerest calumny; but the defendant in such suit cannot recover damages from the plaintiff or from his attorney under our law. The law recognizes that the courts could not be freely resorted to, if the allegations of a petition or notice to appear and answer could be regarded as actionable. If it could be so, then in the end it would only be the powerful and influential, the good and pious, the popular and well-beloved, who could resort to courts. There would be no chance for the friendless one there. If he had property subject to execution the effort to get one injury redressed by suit would simply result in his suffering more injury by reason of another action brought by the person sued, wherein he would be defendant. Such changes could take place in the situation of the parties as that suit after suit should alternate. For it is certain that one suit brought without probable cause is as much a ground for malicious prosecution as two or six. There has been no limit placed upon the number which a plaintiff can bring. If any limit is desired, then legislative action must be had. One may be greatly annoyed by the repeated demands for payment of an unfounded claim, but it would not do to arm fraudulent debtors with a right to recover damages through perjured evidence from a creditor who was merely demanding payment of a debt. The law goes far enough when it makes him take the chance of losing the costs, in addition to his debt, in event of failure to find as favorable ear for his testimony as for that of his opponent. Our government has never seen fit even to add attorney's fees in these costs, which the successful defendant may recover, deeming it better that a successful defendant should be denied remedy, altogether and in every cause, however evident the malice, than that the court should be less open. Think of saying to the already timid litigant:

"You can come into this court, and sue with perfect freedom; it is wide open to you; but if we reach the conclusion, whether correctly so or not, that your suit was prosecuted without probable cause and expresses malice, then woe unto you. For you will not only have to compensate defendant for all costs and expenses and inconvenience suffered by him, but you shall also pay punitive and vindictive damages."

It is recognized that certain legal proceedings in civil cases may be resorted to without cause and with malice so as to give rise to a cause of action for damages. These are cases, as we will show by quoting passages later from the decisions, in which there was something more than merely causing the defendant to be notified to appear and defend on a day certain; they are cases in which the person or property of the defendant was interfered with—cases of arrest of person or seizure of property. The distinctions are pointed out in King v. Sullivan, 92 S. W. 51, upholding suit for malicious bankruptcy proceedings, as follows:

"It seems to be the well-established rule in this state, as well as in a good many other jurisdictions, that no damages can be recovered of any character against any person for filing a civil suit and prosecuting it against another to judgment upon a claim, real, or unfounded, unless one's property or person is wrongfully seized, or in some manner injuriously affected, by process issued therein. McCord-Collins Com. Co. v. Levi (Tex. Civ. App.) 50 S. W. 607; Johnson v. King, 64 Tex. 226; Runge v. Franklin, 72 Tex. 590, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833; Tunstall v. Clifton (Tex. Civ. App.) 49 S. W. 244; Biering v. Bank, 69 Tex. 601, 7 S. W. 90. In jurisdictions where this rule obtains, the obverse rule is that the malicious prosecution, without probable cause, of civil proceedings involving arrest, attachment, sequestration, or other interference with person or property, or which is the cause of any special grievance or injury, will, according to the general current of authority, give a right of action."

There are perhaps a few jurisdictions in which the principles announced by our courts are not recognized, and an examination of the opinions in those states, we believe, will show that their decisions are based on reasoning that is directly repudiated by our court. In Mutual Life Ins. Co. v. Hargus, 99 S. W. 580, it is said:

"Every one is liable to be harassed and injured in his property and feelings by unfounded suits, but this is not an injury for which he can have legal redress. The mere bringing of an unjust or unfounded suit against one is not actionable."

If the petition of appellee can be upheld as against a general demurrer, it must be on the theory that the bringing of several unfounded suits in several names on the same alleged cause, would, without interference with person or property, give the defendant in such suits a cause of action against the plaintiff in such suits, for such are the allegations of said petition of the plaintiff in this cause upon which she relies for recovery. Such is not the rule in Texas, as we show by the following authorities:

In 26 Cyc. p. 15, it is shown that under the Texas rule (as under the English) unfounded suits do not give the defendant therein a cause of action. Citing Texas cases, they say:

"The usual reasoning is that the remedy of a person sued is to tax his costs, whereby he will not be stimulated to interminable litigation based upon constructive harm."

In the case of Smith v. Adams, 27 Tex. 28, it is said:

"If the plaintiffs had been wrongfully harassed by suits by the defendants, their only remedy was to defend the suit successfully, and visit the costs upon the parties suing. Every one is liable to be harassed, and injured in his property and feelings, by unfounded suits; but this is not an injury for which he can have legal redress. To give a right to such redress, there must not only be a loss, but it must have been caused by the violation of some legal right, and no one can claim a legal exemption from suit by another who fancies he has a cause of action against him, however unfounded the claim may be in justice and law. The mere bringing of an unjust or unfounded suit against one is not actionable. Haldeman v. Chambers, 19 Tex. 53, 54. Had the suit been for the wrongful suing out of the writ of sequestration or attachment, by which the defendant's property was seized and he sustained damage, the action might have been maintained. But that was not the ground upon which the plaintiffs proceeded. If suits were wrongfully brought, as alleged, to recover of the plaintiffs money or property, they should have pleaded to the suit so brought. It was not a ground for instituting an independent suit. We are of opinion that the petition showed no cause of action, and the judgment is affirmed."

In the case of Johnson v. King, 64 Tex. 226, it is said:

"The institution of a civil action by one in his own right for the purpose of enforcing a claim, whether that claim be real or unfounded, affords no cause of action against the party suing, unless by the abuse of process the person or property of the defendant be seized or in some manner injuriously affected—following Smith v. Adams, 27 Tex. 31, and Haldeman v. Chambers, 19 Tex. 53."

Merely misstating the name of the real party in interest will not affect the question. Towery v. McDougle-Craig Co., 125 S. W. 621. In the case of McCord-Collins Commerce Co. v. Levi, 21 Tex. Civ. App. 110, 50 S. W. 607, in deciding the question, the court says:

"No damages can be recovered of any character against any person for filing a civil suit

and prosecuting it against another to judgment upon a claim, real or unfounded, unless one's property or person is wrongfully seized, or in some manner injuriously affected, by process issuing therein."

[2] In other Texas cases the common-law rule is recognized that conduct not actionable in itself is not rendered actionable by the fact that two or more act jointly or in confederacy. One of the latest cases is that of Calisher Dry Goods Co. v. Bloch, 147 S. W. 684, where it is said:

"Whatever may be the rule in other jurisdictions, and regardless of on which side the weight of authority rests, it is well established in this state that no damages can be recovered for filing a civil suit and prosecuting it against another upon a claim, real or fanciful, where there is no interference with person or property. The rule in this state is well stated, and the numerous authorities upon the question are cited and discussed in King v. Sullivan, 92 S. W. 51. Also see Towery v. McDougle, 125 S. W. 621; Mutual Life Ins. Co. v. Hargus, 99 S. W. 580; Nowatny v. Grona, 98 S. W. 416."

In support of these views, see, also, McKay v. Wishert, 152 S. W. 508; Thouron v. Skirvin, 57 Tex. Civ. App. 111, 122 S. W. 58; Beckham v. Collins, 54 Tex. Civ. App. 243, 117 S. W. 432; Strauss v. Dundon, 27 S. W. 503; Sherrick v. Wyland, 14 Tex. Civ. App. 300, 37 S. W. 345; Railway Co. v. Ware, 74 Tex. 50, 11 S. W. 918; Towery v. Henderson, 60 Tex. 291.

The matters and things alleged by appellee's petition, if true, present an ugly case, one that appeals to the sympathies of good men, judges and jurors. Especially is this true, when evidence strongly tending to show much ugly conduct on the part of the persons sued to the person suing is introduced, and reinforced by sympathetic appeals for the unfortunate, the infirm, a widow or helpless woman, regardless of whether it presents a legal cause of action or not. To what extreme would the courts be led if they are to decide that actual and exemplary damages could be recovered by the weak, the infirm, the widow or helpless woman, from one who might sue them in a civil action in the courts of our state. For compassion of such class of litigants is likely to be strong in any court or jury, and the testimony of such unfortunate is likely to take a very wide range, and contain support in the minds of a sympathetic court or jury for almost any kind of finding against the alleged wrongdoer. There should be, if there is not already, a law to prevent such abuses as is presented by appellee's petition, and the attention of the Legislature should be called to the necessity for such legislation as will prevent a reoccurrence of such acts; but the courts of our country should not be converted into snares in which even honest litigants may be entrapped, by permitting one who fancies he has been wronged by a civil suit to bring action for damages against the party who sues in open court.

[3] We do not think appellee's petition presents a cause of action against appellants which the courts of this state can or will maintain. Since the undisputed and admitted facts show that there was no interference with the plaintiff's person or property, under any process issued by the court in the suits brought by defendants against plaintiff, it follows that plaintiff cannot amend her petition so as to show a cause of action against defendants for bringing the suits against her. Upon this state of the record, the general rule, that when a judgment is reversed for failure of the trial court to sustain a general demurrer to the plaintiff's petition the cause should be remanded, so that the plaintiff could have an opportunity to amend, is not applicable. We are of the opinion that the judgment of the court below should be reversed, and judgment here rendered for appellants; and it has been so ordered.

Reversed and rendered.