FIRST NAT. BANK OF GORMAN v. MANGUM et al. (No. 690.)

(Court of Civil Appeals of Texas. El Paso. April 5, 1917. Rehearing Denied May 3, 1917.)

1. LIMITATION OF ACTIONS ⬥127(4) — COMMENCEMENT OF ACTION — AMENDMENT OF PLEADING.

Where amendment to petition filed more than two years after breach of contract sued on does not show on its face that recovery for such items was not sought in original petition, it does not show that recovery therefor is barred by two-year statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 544.]

2. APPEAL AND ERROR ☞1097(1) — FORMER DECISION AS LAW OF THE CASE.

Unless very clearly erroneous, rulings made upon a former appeal should be deemed the law of the case in all subsequent proceedings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358, 4359, 4363, 4427.]

3. TRIAL ☞256(1)—INSTRUCTIONS—REQUESTS —NECESSITY.

If defendant desired a fuller presentation of issues than covered by charge, requests presenting such issues in proper form should have been submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628, 633.]

4. DAMAGES ☞45 — AGREEMENT TO EXTEND CREDIT—EXPENSES.

In action against bank for a breach of agreement to extend credit to plaintiff for purchase and sale of produce and to pay checks issued by plaintiff therefor, expenses reasonably incurred in investigating dishonor of checks and adjusting same were recoverable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 92–98.]

5. APPEAL AND ERROR ☞1070(2)—HARMLESS ERROR—FAILURE TO ANSWER SPECIAL ISSUE.

Failure to require jury to answer a special issue submitted which could not have affected the result was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4232, 4233.]

6. CONTRACTS ☞94(1) — AGREEMENT TO EXTEND CREDIT—BREACH.

Plaintiff's fraudulent concealment of fact that he did not on a certain date have sufficient produce on hand to pay indebtedness to bank would not alone have authorized bank to breach previous contract to extend plaintiff credit.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420, 428, 430, 1160.]

7. CONTRACTS ☞305(1)—AGREEMENT TO EXTEND CREDIT—WAIVER OF OBJECTION.

Where bank, having agreed to extend plaintiff credit, did not object to his drawing checks instead of bills of exchange, it waived that right, and plaintiff's departure from the strict terms of the agreement in this regard became immaterial.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398–1400, 1467–1475.]

8. TRIAL ☞253(1)—INSTRUCTIONS—REFUSAL OF ERRONEOUS REQUEST.

The refusal of the request to charge which ignored one phase of the case was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613, 614.]

9. CONTRACTS ☞4—AGREEMENT TO EXTEND CREDIT — IMPLIED AGREEMENT TO ACCEPT DRAFTS IN PAYMENT.

In action for bank's breach of agreement to extend plaintiff credit to enable latter to buy and sell produce, an implied agreement to accept drafts drawn on purchasers as a special deposit, to cover plaintiff's checks, was sufficient for recovery.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 4–6.]

10. TRIAL ☞251(1)—INSTRUCTIONS—REFUSAL OF REQUEST ON IMMATERIAL ISSUE.

The refusal of a request presenting an immaterial issue was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587, 588, 594.]

11. APPEAL AND ERROR ☞1068(1) — HARMLESS ERROR—INSTRUCTIONS—REFUSAL.

Where any possible error in refusing a requested charge was cured by jury's findings, case will not be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4225; Trial, Cent. Dig. § 475.]

12. APPEAL AND ERROR ☞1078(1)—BRIEFS— OBJECTIONS TO EVIDENCE.

Where appellant's brief failed to show objections urged to admission of testimony, assignments of error relating thereto will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4256.]

13. APPEAL AND ERROR ☞1046(5) — HARMLESS ERROR—COURT'S STATEMENT IN JURY'S PRESENCE.

Where the court's statement in the presence of the jury could not have influenced the jury on issues submitted, there was no reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4134.]

14. DAMAGES ☞40(2) — BREACH OF AGREEMENT TO EXTEND CREDIT—REMOTE DAMAGES.

In action against bank for breach of agreement to extend credit to plaintiff, to enable him to purchase and sell produce, plaintiff's lost profits upon a car of produce he could have bought if bank had not breached agreement, was too remote and speculative to be recovered.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 74–78.]

15. BANKS AND BANKING ☞134(1)—BREACH OF AGREEMENT TO EXTEND CREDIT—APPLICATION OF DRAFT TO OTHER DEBTS.

Where plaintiff recovered for bank's failure to honor checks and to extend credit to enable plaintiff to buy and sell produce, the bank having accepted drafts on plaintiff's purchasers but applied amount on other indebtedness, the bank should have allowed the difference between amount of drafts and plaintiff's checks as asked in its counterclaim, as the bank had a right to apply the residue after payment of the checks to plaintiff's other debts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 353.]

Appeal from District Court, Eastland County; Thos. L. Blanton, Judge.

Suit by W. J. Mangum and others against the First National Bank of Gorman. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

See, also, 176 S. W. 1197.

J. R. Stubblefield, of Eastland, and J. B. McEntire, of Gorman, for appellant. Scott & Brelsford, of Eastland, S. W. Bishop, of Gorman, and J. Rupert Jackson, of Baird, for appellees.

## Statement of Case.

HIGGINS, J. This suit was filed by Mangum against the First National Bank of Gorman. The material allegations of the petition were: That on November 1, 1913, he entered into a contract with the bank whereby it agreed to extend to him a line of credit to enable him to buy peanuts and other farm products during the shipping season which would end April 1, 1914. That plaintiff was to buy the products and execute his check or

draft on the bank for the purchase price thereof, and, when a carload was obtained, the same was to be sold and proceeds applied to the payment of such checks or drafts. When the same was sold, a draft was to be drawn upon the purchaser with bill of lading attached and delivered to the bank for collection. That the parties proceeded to carry out the contract, and in January, 1914, plaintiff bought two carloads of peanuts and delivered same to the railway company for shipment to the purchaser. That the peanuts were bought from a number of farmers, and in payment therefor plaintiff had given his checks upon the bank. On January 20, 1914, plaintiff drew his draft upon the purchaser of the peanuts, attaching thereto the bills of lading covering the shipment and delivered same to the bank, at the same time delivering to the bank a list of the checks which he had drawn in favor of the parties from whom the peanuts were bought, the list showing the names of the payees of the checks and amounts thereof, and that the proceeds of the draft delivered by the plaintiff to the bank was a fund provided for the payment of the checks when presented. That defendant maliciously dishonored the checks when they were presented for payment and applied the proceeds of the draft drawn upon the purchaser of the two carloads to the payment of other indebtedness of Mangum and the firm of Mangum & Godwin. That by reason of the dishonor of the checks plaintiff had incurred certain expenses in making adjustment with the holders of the checks given by him. Recovery was prayed for actual and exemplary damages, and that the holders of the checks recover the amount of their checks out of the proceeds of the drafts collected by the bank. The payees of the checks given by Mangum intervened, asking judgment for the respective amounts of the checks held by them.

The cause was submitted upon special issues, and the facts found as follows: That the bank, on November 1, 1913, agreed with Mangum to furnish him a line of credit to enable him to purchase peanuts during the season, and that the line of credit had not been withdrawn prior to the purchase by Mangum of the two cars of peanuts indicated above. That plaintiff delivered bills of lading covering the two cars of peanuts attached to drafts covering the purchase price thereof, and plaintiff then instructed the bank to pay the various amounts mentioned on the list then handed to the bank out of the proceeds of the drafts. After the checks held by the interveners had been dishonored, Mangum incurred an expense of $25 in investigating the dishonor of his checks and attempting to adjust the matter, and incurred an additional expense of $15 paid by him to the interveners to reimburse them for actual expenses incurred by them in attempting to adjust payment of their checks with the bank. That the bank withdrew the line of credit extend-

ed to Mangum after January 20, 1914, and would have refused to have paid for peanuts purchased by him after that date, and that after the withdrawal of said line of credit on January 20, 1914, and before April 1, 1914, Mangum could have purchased a car of peanuts, if the line of credit had not been withdrawn upon which he would have made a profit of $30. That in dishonoring the checks given to the interveners the bank acted without malice. That the bank had notice that the two drafts deposited by Mangum were to cover the proceeds of the peanuts for which the outstanding checks of interveners were given, which notice the bank had at the time the drafts were deposited and before the same were presented for payment. At the time the agreement was made on November 1, 1913, for the bank to extend to Mangum a line of credit to enable him to purchase peanuts or other produce, the plaintiff Mangum, in paying for such produce, was to use bills of exchange.

Upon the facts so found, the court entered judgment against the bank in favor of the interveners for the amount of their respective checks and in favor of Mangum against the bank for the sum of $97.35, the same being the difference between the proceeds of the two drafts and the aggregate amount of interveners' checks, also for the further sum of $70; the same being the amount of his actual damage, as evidenced by the jury's findings. From this judgment, the bank has prosecuted this appeal.

Appellant presents numerous assignments of error. To discuss same in detail would serve no useful purpose and protract the opinion to an unreasonable length. We will therefore state in a general way the conclusions which control the questions presented.

### Conclusions of Law.

[1] 1. The court did not err in overruling a general demurrer to the plaintiff's amended petition. As to the 24 special exceptions lodged against the petition, it is clear that most of them were properly overruled. As to those improperly overruled, if any such there be, the error in so doing was harmless. There is one special exception predicated upon the theory that the amended petition affirmatively discloses that the items of damage sustained by way of expenses were barred by the two years' statute of limitation. The amendment was filed more than two years after the contract was breached, and it does not upon its face disclose that recovery of this item was not sought in the original petition. There is therefore no merit in this exception.

[2] 2. There are a number of assignments which raise questions which were decided adversely to appellant by the Court of Civil Appeals of the Second District upon the former appeal of this case. 176 S. W. 1196. Unless very clearly erroneous, rulings made upon the first appeal should be deemed the law of the

case in all subsequent proceedings. Bomar v. Parker, 68 Tex. 435;[1] Frankland v. Cassaday, 62 Tex. 418. See also cases cited in 1 Michie, Dig. 1132, 1133. Therefore all assignments presenting questions decided adversely to appellant upon the former appeal are overruled.

[3] 3. The court did not err in submitting to the jury the various issues which it did submit. If appellant desired a fuller presentation of the issues, it should have requested that same be so submitted and presented issues in proper form to be given.

[4] 4. The expense reasonably incurred by plaintiff in investigating the dishonor of his checks and adjustment of same and the expense reasonably incurred by him in paying the interveners for their actual expenses in attempting to adjust the payment of their checks with the bank were proper items of damages recoverable by plaintiff for the breach of the contract by the bank, to pay said checks.

5. The fifth special issue, the giving of which is complained of in the eighth assignment, was probably irrelevant and immaterial; but the error, if any, in submitting same, was harmless.

[5, 6] 6. At request of defendant, the court submitted this issue:

"Did the plaintiff fraudulently conceal from the defendant the fact that he did not have on hand any peanuts and other produce, on or about the 1st day of January, 1914, with which to pay the amount of his indebtedness to the defendant bank."

The jury failed to answer it, and complaint is made of the failure to require an answer. If an affirmative finding had been made, it would not have affected the result. The fraudulent concealment by plaintiff that on January 1, 1914, he did not have on hand sufficient peanuts and other produce to pay his indebtedness to the bank, would not alone have authorized that institution to breach a contract theretofore made to extend the line of credit to plaintiff.

[7] 7. The defendant pleaded that, if it ever made a contract with the plaintiff to furnish him a line of credit, it was upon the condition that plaintiff would use bills of exchange in paying for such produce as he might purchase and that plaintiff breached said contract. The jury found that at the time the agreement was made on November 1, 1913, for the bank to extend to Mangum a line of credit, the plaintiff, in paying for such produce as he might purchase, was to use bills of exchange. It is contended that the giving of checks to the interveners instead of bills of exchange constituted such a breach of the contract as would preclude plaintiff from recovering any damages. There might be some merit in this contention if any objection had been made by the bank when it was informed by the plaintiff that he had drawn these checks at the time he delivered to the bank the drafts for collection covering the proceeds of the two cars of pea-

nuts. By its failure to object at that time it waived any right that it might have had to have insisted that bills of exchange should have been given instead of checks, and the departure by the plaintiff from the strict terms of its contract therefore became immaterial. All assignments predicated upon this theory of the defendant are therefore overruled.

[8, 9] 8. There was no error in refusing to give special charge No. 7 requested by defendant. It was sufficient if there was an implied agreement upon the part of the bank to accept the drafts drawn January 20, 1914, to cover the purchase price of the peanuts shipped to the purchaser as a special deposit for the payment of the interveners' checks. Special charge No. 7 ignored this phase of the case.

[10] 9. Special charge No. 8, requested by the defendant, presented an immaterial issue, and its refusal presents no error.

10. The same is true of defendant's special charge No. 9.

[11] 11. The refusal of special charge No. 13 likewise presents no error. The finding of the jury that in dishonoring plaintiff's checks the bank acted without malice cured any possible error which might have been predicated upon the refusal of this charge.

[12] 12. There are a number of assignments of error, complaining of the admission of testimony over the objection of the defendant. The appellant's brief fails to show the objections urged to the admission of the testimony, for which reason we decline to consider these assignments. Lee v. Simmons, 151 S. W. 868; Railway Co. v. Miller, 88 S. W. 499; Railway Co. v. Matlock, 44 Tex. Civ. App. 565, 99 S. W. 1052.

[13] 13. The statement made by the court in the presence of the jury complained of in the thirty-first assignment presents no reversible error. It could have had no influence upon the jury upon any of the issues submitted to them.

14. The evidence is sufficient to support the judgment.

15. There is evidence that the bank impliedly assented to and accepted the drafts as a special deposit for the payment of the checks held by the interveners.

[14] 16. We think the item of $30 allowed plaintiff for lost profits upon a car of peanuts which he would have bought if the bank had not breached its agreement to make advances to Mangum was remote and speculative under the evidence here presented. It should not have been allowed. Carsey & Co. v. Farmer, 117 Ky. 826, 79 S. W. 245.

[15] 17. The court erred in giving plaintiff judgment for the item of $97.35 mentioned above. This item represented the difference between the aggregate amount of interveners' checks and the amount of the drafts deposited by plaintiff covering the proceeds of the two cars of peanuts. The defendant in its counterclaim set up an indebtedness in ex-

[1] 4 S. W. 599.

cess of $97.35 due by plaintiff to it. The facts substantiate the plea. This indebtedness should have been offset against the item of $97.35. After interveners' checks were paid, the balance became a general deposit, and such may be appropriated to discharge the depositor's debt to the bank. 30 L. R. A. (N. S.) note on page 517.

The judgment in favor of interveners is affirmed. The judgment in favor of plaintiff is reduced to $40, and as so reformed is affirmed.

Reformed and affirmed.