**MORRIS v. McCALL et al.**

No. 2259.

Court of Civil Appeals of Texas. Beaumont.

Oct. 20, 1932.

Rehearing Denied Oct. 26, 1932.

H. W. Carothers and Walter F. Brown, both of Houston, for appellant.

S. A. McCall, of Conroe, John D. McCall, of Dallas, E. R. Campbell, of Houston, and Crawford & Crawford and W. N. Foster, all of Conroe, for appellees.

WALKER, C. J.

On the 18th day of October, 1930, A. M. Madeley, J. B. Nutter, and J. N. Cooksey, under authority of the articles 5970–5997, R. S. 1925, filed their petition against Judge A. W. Morris, county judge of Montgomery county, praying for his removal from the office of county judge. On that date the petition for removal was presented to Hon. S. A. McCall, district judge of Montgomery county, who entered thereon his order, temporarily suspending Judge Morris from the office of county judge, and appointed Judge C. T. Smith to fill the vacancy created by the order of temporary suspension. Judge Smith duly qualified and assumed the duties of this office, which he held until the 26th day of November when, judgment having been rendered in favor of Judge Morris in the removal suit, he was duly reinstated in his office. This suit was instituted by Judge Morris against Madeley, Nutter, and Cooksey, the relators in the removal suit, Judge S. A. McCall, the district judge who entered the order of removal, Judge S. A. Crawford, Hon. W. N. Foster, and J. Wahrenberger, to recover $10,000 actual damages and $10,000 exemplary damages, as resulting to him from the institution and prosecution of the removal suit and his temporary suspension from office. There was no count in the petition for the loss of emoluments of office during the period of temporary suspension, nor was there any evidence offered upon the trial of this cause on that issue. The case was tried to a jury and judgment was entered against Judge Morris upon an instructed verdict, from which he has duly prosecuted his appeal to this court. We take the following analysis of appellant's petition from appellees' brief:

"Plaintiff's petition alleged that the defendants 'conspired and agreed to file and caused to be filed, in the District Court of Montgomery County, Texas, a proceeding for the removal of plaintiff from his office as County Judge, charging plaintiff with various acts of alleged official misconduct in his office as such County Judge. That it was a part of such agreement and conspiracy, that defendants Madeley, Cooksey and Nutter should act as relators and file their petition in said District Court, charging plaintiff with official misconduct, as aforesaid, and said McCall, District Judge, should immediately, upon the filing of said petition, enter an order temporarily suspending plaintiff from said office until the case should be tried on its merits. * * * That said defendants filed in the District Court said suit * * * in which

petition, various acts of alleged official misconduct on the part of plaintiff with reference to his office as County Judge, were charged against the plaintiff; and, pursuant to said conspiracy, defendant McCall, at such late hour of the night, entered an order temporarily suspending plaintiff from his office as County Judge, and temporarily appointing C. T. Smith as temporary County Judge during the time of such suspension.

" 'That the charges of alleged official misconduct on the part of plaintiff did not on their face constitute official misconduct on the part of plaintiff as such County Judge, and said charges were untrue, and defendants had no probable ground for instituting such proceedings, and causing plaintiff to be temporarily suspended from his office, * * * and defendants acted maliciously.

" 'That all of defendants participated in the prosecution of such charges, and in causing same to be filed against plaintiff, and the other defendants aided, abetted, encouraged and assisted the relators in the prosecution of such proceeding, counselled and advised same and took active part in the filing of such charges, and the conduct of such proceeding.'

"Plaintiff then, based upon the above allegations, asked for his damages, alleging that he is and was a practicing lawyer and said suit has greatly injured him in his professional standing and his ability to earn money as an attorney; and that he has been injured in his reputation, and has been held up to public scorn and ridicule by reason of said facts, and has been caused to suffer great mental anguish and physical pain, and will continue to so suffer. Defendants urged a general demurrer."

### Opinion.

Without detailing the testimony offered upon the trial of this case, but only for the purpose of discussing the propositions of law presented by this appeal, we will assume that appellant's pleadings and evidence raised the issues that appellees instituted the removal suit and prosecuted it to judgment with malice and without probable cause and, as a result of the filing and prosecution of the suit, appellant suffered the actual damages sued for. Upon this fact conclusion, whatever may be the character of the evidence raising these issues, it is our judgment that none of appellees were liable to appellant for any of the damages sued for.

The following brief statement from appellees' brief presents fairly appellant's case against Judge McCall: "Plaintiff's petition alleges that defendant, McCall, was the qualified and acting district judge of the county, and agreed with the other defendants that if they should file the ouster suit, he would immediately enter an order temporarily suspending plaintiff from his office, and before such proceeding was filed, said defendant solicited one of the citizens of the county to accept the office of temporary county judge, as soon as such proceeding should be filed, and he should be authorized to proceed with such suspension; that pursuant to said agreement, said defendant, upon the presentation to him of such petition, entered an order temporarily suspending plaintiff from his office, and appointing C. T. Smith as temporary county judge. That the charges made in the petition were not true, and did not constitute official misconduct, and that the acts of said defendant were done maliciously."

By the removal statutes cited above, Judge McCall was given jurisdiction over the issues raised by the petition for removal, and by article 5982, if he saw fit, to suspend Judge Morris temporarily from office. The consideration by Judge McCall of the petition, the making by him of the statutory orders in relation thereto, the time of making these orders, and the order of temporary removal, involved the exercise of the judicial powers vested in him by these articles of the statute. While Judge McCall was given the power to make these orders upon the presentation to him of the petition, by article 5979 he was not required to make them. The clear intent of these removal statutes is to require the district judge to give a careful consideration to the petition of removal and to make such orders in relation thereto as, in his judgment, acting in his judicial capacity, the exigencies of the situation require. Poe v. State of Texas, 72 Tex. 629, 10 S. W. 737; Griner v. Thomas, District Judge, 101 Tex. 39, 104 S. W. 1058, 16 Ann. Cas. 944. Having thus acted within his judicial discretion, he was not civilly liable to appellant for the consequences of his act, quoting from appellees' brief, "even though the same were done negligently, wilfully or maliciously." The authorities of this state fully sustain this proposition. Rains v. Simpson, 50 Tex. 495, 32 Am. Rep. 609; Taylor v. Goodrich, 25 Tex. Civ. App. 109, 40 S. W. 515, 519; Kruegel v. Cobb, 58 Tex. Civ. App. 449, 124 S. W. 723, 728. Rains v. Simpson, supra, so clearly sustains the judgment of the lower court in favor of Judge McCall, that we quote therefrom as follows:

"We find for our guidance decisions of the highest courts of last resort. In the case of Yates v. Lansing, 5 Johns. [N. Y.] 282, the question of the personal liability of judicial officers for official acts was most elaborately considered by Chief Justice Kent, and it was shown that, from the time of the Yearbooks, it was a settled principle and the very foundation of all well-ordered jurisprudence that every judge, whether of a higher or a lower court, in the exercise of the jurisdiction conferred on him by law, had the right to decide according to his own free and unembarrassed convictions, uninfluenced by any apprehension of private prosecution.

"The learned chief justice considered this as a sacred principle which had a deep root in the common law, and said that 'No man can foresee the disastrous consequences of a precedent in favor of such suit. Whenever we subject the established courts of the land to the degradation of a private prosecution, we subdue their independence and destroy their authority. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon everything sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty.' * * * This case, after full argument, was affirmed by the Court of Errors of New York. (9 Johns. [N. Y.] 395 [6 Am. Dec. 290].)

"The principles upon which these decisions rest lie at the very foundation of all good government,—'the greatest good to the greatest number.' As has been well said in this connection by an eminent judge, 'In the imperfection of human nature, it is better that an individual should occasionally suffer a wrong, than the course of justice should be impeded and fettered by constant and perpetual restraint and apprehension on the part of those who are to administer it.' (Lord Tenterden, Ch. J., in Garnett v. Ferrand, 6 B. & C., cited in Cooley on Tax., 552, note 1.)

"This privilege is not intended so much for the protection of the judge as an individual, as for the protection of society, by preventing the scandal and embarrassment which would follow should the judicial department, which represents one of the most sensitive and vital parts of sovereignty, be subjected to the separate prosecutions of private parties. As a delegated part of this sovereignty, the actions of the judiciary represent and affect the public; and if there is in the judge presiding such a departure from that true dignity and spotless purity which should characterize the high trust and confidence reposed, he is subject to be arraigned, punished, and removed from office by indictment or impeachment, at the suit of that power from which he derives his authority. As in many other cases by the common law, the private injury is merged into the public wrong, and by our laws protection is intended to be given to society, and indirectly to the individual, by the removal from office and punishment of the offender. (Const. 1869, art. 5, sec. 10; 2d Sess. 14th Leg., 48.)

"From the very necessity of the case, this immunity from private liability extends not only to negligent, but willful and malicious judicial acts. As said by Chief Justice Shaw in Pratt v. Gardner, 2 Cush. [Mass.] 69 [48 Am. Dec. 652]: 'If an action might be brought against the judge by a party feeling himself aggrieved, the judge would be compelled to put in issue facts in which he has no interest,

and the case must be tried before some other judge, who in his turn might be held amenable to the losing party, and so on indefinitely. If it be said that it may be conceded that the action will not lie unless in a case where a judge has acted partially or corruptly, the answer is, that the losing party may always aver that the judge has acted partially or corruptly, and may offer testimony of bystanders or others to prove it; and these proofs are addressed to the court and jury, before whom the judge is called to defend himself, and the result is made to depend not upon his own original conviction, (the conclusion of his own mind in the decision of the original case,) as by the theory of jurisprudence it ought to do, but upon the conclusion of other minds, under the influence of other and different circumstances.'

"To the same effect is Weaver v. Devendorf, 3 Denio [N. Y.] 117, in which it is said, by Beardsley, J.: 'But I prefer to place the decision on the broad ground that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which prompted it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest; to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power.'

"That able jurist, Judge Cooley, in a valuable contribution on this subject in 3 Southern Law Review, (N. S.) 547, says: 'But our own view is, that the doctrine that a public officer, acting within the limits of his jurisdiction in the discharge of a discretionary duty, can be held liable upon an assumption that he has acted willfully or maliciously, is an exceedingly unsatisfactory and dangerous one; and that those decisions are safest and most consonant to public policy which deny it altogether. Motives are not always readily justified to the public, even in cases where they have been purest; and the safe rule for the public is that which protects its officers in acting fearlessly, so long as they keep within the limits of their legal discretion,'—citing in note 26 Sage v. Laurain, 19 Mich. 137; Cooley on Tax., 552. To the same effect are Shear. & Red. on Neg., 157; Wilson v. Mayor, etc., 1 Denio [N. Y.] 597 [43 Am. Dec. 719]."

 Upon the cause of action pleaded by appellant and the proof offered by him in support of his allegations, the rule announced by our Supreme Court in Pye v. Cardwell, 110 Tex. 572, 222 S. W. 153, clearly exonerates all the appellees from liability. It was there said by Judge Greenwood, speaking for the Supreme Court: "The rule is firmly established in Texas which denies an award of

damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suits, with his person or property. Smith v. Adams, 27 Tex. 30; Salado College v. Davis, 47 Tex. 134; Johnson v. King, 64 Tex. 226."

Though there was no interference with his person, appellant says Pye v. Cardwell, just cited, does not rule his case because he was deprived of the right to recover the emoluments of his office during the period of suspension and that this loss was an interference with his property rights. That he did not sue for lost emoluments of office is a sufficient answer to this contention. As already stated, there was no count in his petition, nor was there any proof, that he lost one cent of the emoluments of his office as the result of his temporary suspension. This fact brings the case exactly within the rule announced in Pye v. Cardwell. There is no factor in the mere institution and prosecution to judgment of an ouster suit, under the articles of the statute cited above, to distinguish it from the ordinary civil suit, as defined by the jurisprudence of this state. (But we are not suggesting that, had appellant lost the emoluments of his office during his suspension, appellees would have been liable to him for any element of the damages sued for herein.)

In instituting their ouster suit under the removal statute, relators were pursuing a lawful remedy in a lawful manner, and its institution and prosecution did not create a civil liability, regardless of the motives on their part that prompted its institution. In Celli & Del Papa v. Galveston Brewing Co. (Tex. Com. App.) 227 S. W. 941, 943, the court said: "If the act be lawful, an improper motive does not render it unlawful. 'Malicious motives make a bad case worse, but they cannot make that wrong which in its own essence is lawful.'" And again: "To maintain an action, plaintiff must show that defendant has committed some unlawful act which would interfere with some right of plaintiff."

Since the overt act of filing and prosecuting the ouster suit did not create a cause of action in favor of appellant against appellees, the charge of conspiracy as made by him against them by his pleading and proof did not constitute a cause of action. In 5 R. C. L. 1090, the rule governing this conclusion is stated as follows: "Accurately speaking, there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone. While the crime of conspiracy may be committed without doing any overt act in pursuance of the combination, no civil action is incurred for the conspiracy, but only for the overt act of the conspirators." In 9 Tex. Jur. 395, §

16, it is said: "An act which, if done by one alone, constitutes no ground of action, cannot be made the subject of a suit by alleging it to have been done by and through a conspiracy of several. The true test as to whether such action will lie, is whether or not the act accomplished after the conspiracy has been formed, is itself actionable." The following additional authorities fully support the texts just quoted: Delz v. Winfree, 80 Tex. 404, 16 S. W. 111, 26 Am. St. Rep. 755; Green v. Bennett (Tex. Civ. App.) 110 S. W. 108, 115; Meurer v. Hooper (Tex. Civ. App.) 271 S. W. 172, 177; Knowles v. Gary (Tex. Civ. App.) 141 S. W. 189; Grand Lodge v. Schuetze, 36 Tex. Civ. App. 539, 83 S. W. 241, 246; Kruegel v. Murphy (Tex. Civ. App.) 168 S. W. 983, 984; Wills v. Central Ice Co., 39 Tex. Civ. App. 483, 88 S. W. 265; McKee v. Hughes, 133 Tenn. 455, 181 S. W. 930, L. R. A. 1916D, 391, Ann. Cas. 1918A, 459; Harris v. Thomas (Tex. Civ. App.) 217 S. W. 1068, 1077; Pye v. Cardwell (Tex. Civ. App.) 224 S. W. 542; Id., 110 Tex. 572, 222 S. W. 153.

For the reasons stated the judgment of the lower court is in all things affirmed.