## SHAPLEIGH HARDWARE CO., Inc., v. KEELAND BROS., Inc.
### No. 9847.

Court of Civil Appeals of Texas. Galveston. March 8, 1933.

Rehearing Denied March 23, 1933.

Aldrich & Crook, of Crockett, for appellant.

D. A. Nunn and S. A. Denny, both of Crockett, for appellee.

LANE, Justice.

This suit was brought by Shapleigh Hardware Company, Inc., against Keeland Bros., Inc., in the county court at law, Dallas county, Tex., upon an open account for $345.39, alleged to have been for merchandise sold and delivered by plaintiff to defendant, doing business in Houston county, Tex. The account sued upon was duly verified.

The cause was transferred to the county court of Houston county on defendant's plea of privilege.

In the county court of Houston county defendant answered by general exception, general denial, and by a special plea, denying that it purchased or agreed to purchase the merchandise, or any part thereof, and alleged that plaintiff shipped said merchandise to defendant without its knowledge or consent; that said merchandise was hauled from the freight depot in Crockett to defendant's place of business in Crockett by defendant's driver; and that defendant did not know the kind

and character of such merchandise until after it had paid the freight on it, and as soon as it ascertained the kind of merchandise, it declined to receive it, and prepared to ship same back to plaintiff, but did not because plaintiff's agent requested defendant not to do so and agreed that he would write plaintiff to send it to some other customer.

Defendant further alleged that it had repeatedly advised plaintiff that it did not purchase such merchandise and that it would not accept and pay for same, and that it would hold the same subject to the plaintiff's order.

By way of cross-action defendant, by the fourth and fifth paragraphs of its answer, alleged as follows:

"That by way of counter claim and cross-bill this defendant would show to the court that defendant has been damaged in this, that plaintiff never refunded to it the amount of freight it paid on said shipment of merchandise, amounting to the sum of Two & 10/100 ($2.10) Dollars. That said merchandise has been stored away in its warehouse for about seventeen months, that the storage for same is of the reasonable value of Fifty Cents per month, amounting to Eight & 50/100 ($8.50) Dollars.

"And by way of plea for special and punitive damages, defendant would show that on or about September 19, 1931, plaintiff, a foreign corporation, without permit to do business in the State of Texas, brought this suit against it in the County Court at Law Number Two, Dallas County, Texas, for the sum of Three Hundred Forty-five & 39/100 ($345.-39) Dollars, alleging same to be the purchase price of said merchandise. That said suit was wrongfully, wantonly and maliciously brought in said County of Dallas. That defendant's residence is in Houston County, Texas, and not in Dallas County, and that defendant was forced to employ counsel to represent it and to procure the judgment of said court, removing said suit to Houston County, Texas. Defendant charges that plaintiff was moved by malice and without any cause whatever and the desire to annoy and worry defendant and to cause him to pay an attorney's fee, which amounted to Ten ($10.00) Dollars, for representing it on its plea of privilege in the County Court of Dallas County, Texas, where suit was filed and in having it transferred to the County Court of Houston County, the place of residence of the defendant, and One Hundred ($100.00) Dollars attorney's fee for representing it upon trial of this case on its merits. Defendant charges that plaintiff well knew that defendant had neither bought nor contracted to buy said merchandise and that said suit was wrongfully, maliciously and wantonly brought, and that same has caused defendant a lot of worry and mortification, and has damaged its standing and credit as a mercantile business. That defendant is engaged in the general mercan-

tile business in Crockett, Houston County, Texas, doing a large business and buying merchandise from many different wholesale houses, both in and out of the State of Texas. That upon the filing of this suit the wholesale houses from whom it had formerly purchased merchandise and did business with on time and easy terms declined further to sell defendant merchandise on the usual time and terms, but demanded cash, stating that defendant had been sued and thereby its credit was impaired. That by reason of such illegal and wrongful act, defendant was prevented from buying merchandise as he had formerly bought it, that is, on reasonable terms and time, and thereby lost the profits he would have made had he been able to purchase such goods as formerly. That defendant was notified by several of the wholesale dealers, with whom it did business, that they had notice of its being sued and that they could not do business with it on the same terms as they formerly had, to its damages in the sum of Two Hundred Fifty ($250.00) Dollars.

"Defendant charges that it has been greatly worried and mortified by the said impairment of its good name and credit, brought about by the unjust, wrongful and malicious act of plaintiff in filing suit against it. That defendant has always enjoyed the confidence of the business world during its business career, and was never before sued on a claim of merchandise by a creditor, and it shows to the court that it is entitled to exemplary damages for such injuries in the sum of Six Hundred ($600.00) Dollars.

"That defendant has never opened the box of merchandise involved in this suit, but stored same as heretofore alleged and has been holding same subject to the instructions of the plaintiff as to where same would be shipped, but not receiving any instructions in that regard defendant now and here tenders into court said box of merchandise."

Defendant prayed for judgment for both actual and exemplary damages, in the sum of $970.70, and for costs of suit; for judgment decreeing a charge on and against said merchandise, which it tendered into court, to pay any judgment that may be rendered in its favor, and that the same be sold under order of the court to satisfy such judgment.

By supplemental petition the plaintiff specially excepted to all of paragraphs 4 and 5 of defendant's answer, which we have above copied. It also specially excepted to the last paragraph of said answer.

Plaintiff's exception to paragraph 4 is that it sets up no facts that would charge plaintiff for damages therein claimed. It excepts to paragraph 5, wherein defendant sues for attorney's fees, because the allegations therein show no cause of action against plaintiff. It also excepts to so much of paragraph 5 as undertakes to set up damages for injury to defendant's business by reason of plaintiff's

suit, and to so much thereof as undertakes to set up cause for the recovery of exemplary damages, because such allegations do not state any facts that would entitle defendant to exemplary damages.

Subject to its general demurrer and exceptions, plaintiff made general denial of all allegations of the answer of defendant.

The court overruled all of the plaintiff's exceptions to defendant's answer.

The cause was tried before the court without a jury and upon the pleadings and evidence judgment was rendered decreeing that the plaintiff take nothing by its suit; that defendant, Keeland Bros., Inc., recover the sum of $170.50 from the plaintiff. The court decreed by its judgment that the merchandise in the possession of defendant is subject to the orders of the court, and ordered that the same be sold as under execution, and that the proceeds thereof be applied as follows:

"First, to the costs incurred in this case. Second, to the above judgment of the defendant against plaintiff for the sum of One Hundred and Seventy & 50/100 Dollars and legal interest thereon from this date. And Third, the excess, if any, be paid over to the plaintiff. For all of which execution and order of sale shall issue."

From such judgment Shapleigh Hardware Company, Inc., has appealed.

 For reversal of the judgment appellant contends that the allegations of paragraphs 4 and 5 of appellee's answer set up no damage of any character that can be recovered against appellant by reason of the civil suit filed and prosecuted by him; and therefore the court erred in overruling his special demurrers to said paragraphs 4 and 5 of appellee's answer.

The contention of appellant is sustained. The theory of defendant's cross-action. as made by its pleadings and its evidence is that as appellant has brought an unwarranted suit against it upon an unfounded claim and demand, and that such suit was brought maliciously for the purpose of unjustly, extorting money from it, defendant should be permitted to recover from appellant damages incurred by reason of such suit, both actual and exemplary. The court must be open and every person for injury shall have remedy according to the law of the land. The mere fact that by civil suit a moral duty may have been disregarded, or moral right invaded, and inconvenience suffered or expense incurred in consequence thereof is. not sufficient to give rise to an action for tort, where no legal right has been infringed.

"Every one is liable to be harassed and injured in his property and feelings by unfounded suits, but this is not an injury for which he can have legal redress." Smith v. Adams, 27 Tex. 29.

"The courts are usually regarded as institutions where human rights are protected by the most efficient agencies devised by the ingenuity of man. It may sometimes result in actual injury to one to merely cite him to come there as a defendant, but it would be a diabolical irony and paradox which would go to the foundations of all legal remedy to entertain any evidence or argument against the conclusive presumption of law that, where nothing more is done than to cite defendant to appear in court and defend an alleged cause of action, the defendant will have justice done him in that proceeding, so as to leave nothing to complain of on his part in a separate suit. The above maxim says that every person for injury done him shall have remedy, etc., and it must be admitted that because of the frailty and imperfection of all human agencies, injury does sometimes result from merely judicial proceedings, and here lies the opportunity for irony which may perhaps have exerted its subtle influence on the courts of some jurisdictions, but not upon our courts, as will be shown later." Above quotation is from Pye v. Cardwell (Tex. Civ. App.) 224 S. W. 542, 544.

In Pye v. Cardwell (Tex. Civ. App.) 224 S. W. 542, an opinion by this court, the very contention here involved is fully discussed and many authorities are there cited sustaining the conclusions we have reached in this case. In the case last cited, the plaintiff in the trial court alleged, "that the suits were brought in furtherance of a conspiracy by the three appellants to unlawfully extort money from appellee, which appellants knew she did not owe; that appellants used the names of other persons in bringing the suits; that as fast as appellee employed counsel to present her defense in each suit, it was dismissed and a new suit was filed in a different place; that the suits caused appellee great worry, annoyance, and physical inconvenience, and also caused her to lose sleep, peace of mind and business; and that she incurred $50.00 attorney's fees; and she prayed for the recovery of $250.00 actual damages and $700.00 exemplary damages."

While the case was pending in this court on motion for rehearing, we certified to the Supreme Court the question as to whether a cause of action was alleged by plaintiff for damages, actual and exemplary, resulting from the institution against her of seven suits at the instigation of defendants. The Supreme Court in answering the question (110 Tex. 572, 222 S. W. 153) among other things said:

"The rule is firmly established in Texas which denies an award of damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suits, with his person or property. Smith v. Adams, 27 Tex. 28, 30; Salado College v. Da-

vis, 47 Tex. 131, 134; Johnson v. King, 64 Tex. 226. * * *

"Under the rule, each suit could be maintained without liability to appellee save for the costs. Judge Gould, speaking for the court in Salado College v. Davis, supra, said:

"'In ordinary cases, where no further wrongful act is complained of than the institution of a groundless suit, though done knowingly and with intent to harass, the award of costs is, in contemplation of law, full compensation for the unjust vexation. (Cotterell v. Jones, 73 Eng. Com. L. 727.)

"'In such cases, the defendant recovers his costs "but no allowance is made for his time, indirect loss, annoyance, or counsel fees." (Sedg. on Dam., 38.) He proceeds: "Every defendant against whom an action is 'unnecessarily' brought, experiences some injury or inconvenience beyond what the costs will compensate him for." This injury or inconvenience results from a resort to the legally constituted tribunals; and it seems to be the policy of the law to content itself with meting out something less than our ideas of natural justice would demand, rather than to increase the risks attending and discouraging such a resort, and at the same time add to the difficulties and intricacies of ordinary litigation.'"

The court answered the question propounded saying: "The petition of appellee presented no cause of action for damages by reason of the mentioned suits."

In further support of the contention that appellee's answer or cross-action presents no cause of action for attorney's fees or for damage to its business, see Tyler v. Sowders (Tex. Civ. App.) 173 S. W. 640; Beckham v. Collins, 54 Tex. Civ. App. 241, 117 S. W. 431; 17 Corpus Juris, page 974; First Nat'l Bank v. Mangum (Tex. Civ. App.) 194 S. W. 647; 17 Corpus Juris, page 785, § 112.

The items going to make up the $170.50 awarded to appellee in this suit, as shown by the findings of fact filed by the trial court, are these: $10 paid as attorney's fee in the Dallas county court; $100 paid as attorney's fee in the Houston county court, after the cause was transferred from the Dallas court on appellee's plea of privilege to the Houston county court; $50 as damage suffered by appellee by reason of the institution of the suit; $2.10 for freight paid on the merchandise; and $8.50 for storage of same. No exemplary damage was awarded.

For the reasons pointed out, so much of the judgment as awards to appellee $110 for attorney's fees paid by appellee in defending this suit, and $50 as loss in its business by reason of the institution of this suit, is reversed and here rendered that appellee take nothing by his suit for such items, and that appellee pay all costs of this appeal. In all

other respects the judgment stands undisturbed and is affirmed.

Reversed and rendered in part.

Affirmed in part.

On Motion for Rehearing.

Appellee, Keeland Bros., Inc., in its petition alleges that Shapleigh Hardware Company, Inc., is a foreign corporation without permit to do business in the state of Texas. It has filed its motion for rehearing and repeats such allegations, seemingly contending that because appellant was a foreign corporation doing business in Texas without a permit, the suit brought by it was wrongfully brought, and that such wrongful act entitled appellee to recover from appellant the items awarded to it by the trial court and eliminated by the judgment of this court.

If such be appellee's contention, it is overruled. The undisputed facts show that Shapleigh Hardware Company, Inc., appellant, is a Missouri corporation; that it has its salesmen or drummers in Texas, who take orders from customers and send them in to the Missouri office to be filled. When such orders are accepted the goods are forwarded to the purchaser in Texas.

In the present case it is shown that one of appellant's agents sent in an order directing appellant to ship to Keeland Bros., Inc., certain merchandise. Such transactions have been repeatedly held by the courts to be interstate commerce.

"The state, however, has no power to legislate upon the subject of interstate commerce, nor to place any restrictions upon it; and, in so far as the statute has such effect, it is void." Miller & Co. v. Goodman, 91 Tex. 41, 40 S. W. 718, 719, and cases there cited.

"The employment of an agent in this state by a foreign corporation to secure orders for goods to be shipped here from another state is interstate commerce, and the corporation is not required to obtain a permit." French, Finch & Co. v. Hicks (Tex. Civ. App.) 92 S. W. 1034.

"A foreign corporation employing traveling agents in the state to solicit orders for merchandise, and shipping into the state merchandise to fill the orders, is engaged in interstate commerce, and is not within Rev. Civ. St. 1911, arts. 1314, 1318 [now art. 1529 et seq.], requiring foreign corporations to obtain a permit to transact business in the state." Erwin et al. v. E. I. DuPont de Nemours Powder Co. et al. (Tex. Civ. App.) 156 S. W. 1097.

Corporations can sue on interstate shipments, because such is interstate commerce. Texas & Pacific Ry. Co. v. Davis, 93 Tex. 378, 54 S. W. 381, 55 S. W. 562; Maury-Cole Co. v. Lockhart Grocery Company (Tex. Civ. App.) 173 S. W. 262, 263; Geiser Mfg. Co. v. Gray, 59 Tex. Civ. App. 617, 126 S. W. 610;

**514**

Stein Double Cushion Tire Company v. Wm. T. Fulton Co. (Tex. Civ. App.) 159 S. W. 1013; F. L. Shaw Co. v. Dalton Adding Machine Co. (Tex. Civ. App.) 211 S. W. 833; Watkins Medical Co. v. Johnson (Tex. Civ. App.) 162 S. W. 394.

In Maury-Cole Co. v. Lockhart Grocery Co., supra, it is said: "A sale of goods by a foreign corporation to parties within this state, notwithstanding the orders may be taken direct through the instrumentality of their drummers traveling in this state, constitutes interstate commerce, and is not subject to the regulations prescribed by the foregoing articles of said chapter."

In 19 Cyc. 1230, it is said: "Sales of goods by a corporation situated without a state, to a resident of the state, even though made through traveling salesmen or agents sent into the state, to be shipped to him into the state, belong to the operations of interstate commerce, and are consequently not subject to a prohibition of the state Constitution or statute against foreign corporations doing business within the state without having an agent or place of business therein, or otherwise subject to prohibition or regulation by the state."

At page 1272, Id., subd. 6, it is said: "Statutes of the kind under consideration have no application to the case where a corporation sends into the restricting state its traveling agent, who solicits orders for its goods and forwards them, subject to approval, to the home office, the orders being afterwards filled by shipments to the customer. Such an application of the statute would be inadmissible in so far as state statutes are concerned, because, so applied, it would have the effect of imposing a restraint upon commerce between the states or with foreign countries."

In F. L. Shaw Co. v. Dalton Adding Machine Co., supra, it is held that: "A foreign corporation manufacturing its products in another state, and selling them in Texas through the medium of soliciting or sales agents upon written orders forwarded to the factory in the other state was engaged in interstate commerce, and was not transacting business in Texas, and, in order to maintain suit to enforce rights growing out of such sales, need not obtain a permit under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1314, 1315."

In the motion for rehearing it is stated that we erred in not making disposition of the box of guns involved in the suit.

There is no conceivable merit in such contention. The box of guns was tendered into court to be delivered to the plaintiff in the suit, defendant declaring he had no ownership thereof, but asserting a lien thereon to satisfy the judgment in its favor. It clearly follows from the judgment rendered by this

court that the box of guns is the property of appellant and that it is subject to the demands of appellant upon its payment of the amount adjudged against it by this court, including the cost incurred in the trial courts.

The motion is overruled.