**KEA–HAM CONTRACTING, INC. Appellant**

v.

**FLOYD COUNTY DEVELOPMENT AUTHORITY and BURL WELLS SPURLOCK Appellees**

No. 1998–SC–0982–DG.

Supreme Court of Kentucky.

Oct. 26, 2000.

As Modified on Denial of Rehearing March 22, 2001.

Pierre Michael de Bourbon, Pruitt and de Bourbon Law Firm, Pikeville, for Appellant.

Bradford L. Cowgill, William Craig Robertson, III, Wyatt, Tarrant & Combs, Lexington, Richard E. Fitzpatrick, Fitzpatrick, Osborne & Sturgill, Prestonsburg, Michael J. Schmitt, Wells, Porter, Schmitt & Jones, LLP, Paintsville, for Appellee.

LAMBERT, Chief Justice.

This Court granted discretionary review to consider the doctrine of sovereign immunity as it may apply to a county development authority and the doctrine of official immunity as it may apply to the board chairman of that entity. In the trial court, summary judgment was granted in favor of the development authority and its board chairman on grounds that each of them were entitled to their asserted immunity. The Court of Appeals affirmed the trial

court's decision on immunity grounds. As this case was dealt with by both courts below as presenting pure questions of law, the averments of Appellant's pleadings as recited herein are understood to be controverted. Thus, our statement of the case should not be treated as findings of fact or as unassailable. If, at trial, the evidence is in dispute, it should be resolved as the law requires.

The Chairman of the Board of the Floyd County Development Authority assured Kea–Ham Contracting Inc., that interim financing was in place to make progress payments upon a construction contract. In fact, the interim financing was not in place and the Authority defaulted on its payments, compelling Kea–Ham to sue for damages. The Authority claims to be a part of the central state government of Kentucky and thus protected by the doctrine of sovereign immunity. Kea–Ham asserts that the Authority is a municipal corporation and is without sovereign immunity protection. As to the Board Chairman, a claim of official immunity is asserted on the view that his actions were discretionary rather than merely ministerial. Kea–Ham takes the opposing view.

The Floyd County Development Authority is a non-profit entity created by Floyd County pursuant to KRS 154.50–316 to promote economic progress in the county by acquiring and developing land for industrial and commercial uses. The Authority is governed by a six-person board appointed by the County Judge–Executive. Its sources of funding include grants from state agencies. It may also borrow money and issue bonds.

The underlying dispute arose from the development of an industrial site by the Authority. The Authority undertook to purchase and develop a tract of land and then sell it to a corporation that had agreed to construct a manufacturing facility on the site. To finance the project, the Authority received grants of approximately $2 million from the Kentucky Economic Development Finance Authority and the Kentucky Department of Local Government. The Authority advertised for bids for excavation of the site and Kea–Ham Contracting, Inc. was awarded the construction contract.

One of the Authority's obligations under the contract was to make progress payments to Kea–Ham as phases of the work were completed. The project conditions required a performance and payment bond by Kea–Ham. For Kea–Ham to obtain this bond, the bonding company required assurances that funding for the project was in place before Kea-ham began work. Because of Kea–Hams' small size and financial limitations, the company could not withstand a period of non-payment. Thus, Kea–Ham sought assurances from the Authority that adequate funding was in place, and, consequently, Burl Wells Spurlock, Chairman of the Board of the Authority, wrote a letter to Kea–Ham's insurance agent representing that interim funding was in place at a local bank.[1] Kea–Ham began the earth moving work, but the Authority failed to make its progress payments. Kea–Ham then learned that, contrary to the terms of the letter, there was no funding, and it ceased working on the construction project.

1.  The text of the letter is as follows:
    Per your request, this is to advise that Kea–Ham Contracting, Inc., will be paid pursuant to invoices presented on a monthly basis by them to the Floyd County Development Authority. The invoices will be reviewed by Summit Engineering, the consulting engineering company, for verification of labor performed and materials supplied, and compliance with all terms of their contract, and then transmitted to the Authority for payment.
    The authority has interim financing approved in the amount of $1 .5 million from The Bank Josephine, Prestonsburg, Kentucky, which will be supplemented by LGEDF (coal severance tax) of $1,460,000. And a CDBG of $595,555.
    Should you need additional information, please advise.

Kea–Ham sued Spurlock for fraud and/or negligence, and it sued the Authority for Spurlock's actions as well as for breach of contract. The Authority and Spurlock filed motions to dismiss based upon sovereign immunity and official immunity, respectively. The Floyd Circuit Court granted the motions (in the form of summary judgments since facts outside the pleadings had been considered), ruling that both defendants were entitled to immunity on all claims. The Circuit Court declined to dismiss the claims against the Authority entirely, however, ruling that immunity had been waived to the extent that insurance coverage was in place to compensate for the loss.

All parties appealed, and the Court of Appeals affirmed. Relying on a 1985 Court of Appeals case, *Inco, Ltd. v. Lexington–Fayette Urban County Airport Board,*[2] the Court of Appeals held that the Authority was an agency of Floyd County and thus entitled to immunity. It also held that Spurlock was protected from suit by the doctrine of official immunity, as his actions were discretionary in nature. The Court of Appeals also reversed the Circuit Court's ruling that immunity was waived to the extent of insurance coverage, relying on this Court's holding in *Withers v. University of Kentucky.*[3]

Kea–Ham now contends that the Court of Appeals decision is flawed because it failed to apply the proper test, announced in *Kentucky Center for the Arts v. Berns,*[4] for determining whether an entity is entitled to sovereign immunity. In *Berns,* the main issue was whether the Kentucky Center for the Arts (KCA) was a part of the central state government, and thus immune from suit, or a municipal corporation, and thus without immunity. For its decision, the Court applied a two-part test, which focused on control and funding. The control part of the test inquired

whether the KCA was under the direction and control of an immune entity or, whether it was independently controlled. The funding part of the test inquired whether the KCA was funded by the central state government or whether it had alternate methods of funding.

■ *Berns* also provided a description of entities properly classified as municipal corporations In Berns, the Court stated that municipal corporations are "local entities created by act of the General Assembly and not agencies performing the services of the central state government."[5] In articulating the distinction between state agencies and municipal corporations, *Berns* concluded that the key factor is not "whether the entity created by state statute is or is not a city, but whether, when viewed as a whole, the entity is carrying out a function integral to state government."[6] A similar point was made in *Withers* with the observation that operation of a hospital is essential to the teaching and research function of the University of Kentucky Medical School.

■ Application of the two-part *Berns* test to the Authority indicates that it is a municipal corporation unprotected from suit by the shield of sovereign immunity. With regard to the control test, although the Authority's board members are appointed by the County Judge–Executive, they serve for a term of four years and have independent responsibility for making decisions for the Authority.

■ The funding part of the *Berns* test also indicates that the Authority is an independent municipal corporation, as it has several alternate means of funding. The Authority's funding is not limited to appropriations from the central government, as it can receive grants from other agencies, borrow money on its own credit, and issue

2. Ky.App., 705 S.W.2d 933 (1985).

3. Ky., 939 S.W.2d 340 (1997).

4. Ky., 801 S.W.2d 327, 331 (1991).

5. *Id.* at 331.

6. *Id.* at 332.

bonds.[7] It can also generate funds by the purchase and sale of real estate. Moreover, the source of funding for any individual project is not determinative of sovereign immunity, as this determination is made by analyzing the entity, not the specific project. Governmental entities are not protected by sovereign immunity on one project without protection on another by virtue of the source of funding for the particular project.

    Having determined that the Authority is not shielded from liability by sovereign immunity, we must next decide whether Chairman Spurlock is protected by the doctrine of official immunity. This Court recently re-visited this issue in *Franklin County v. Malone*[8] and reiterated the proposition that while ministerial acts of public officials are actionable, public officials receive immunity for their discretionary acts. Thus, the decisive issue here is whether Spurlock, by sending the letter assuring that interim financing was in place, performed a discretionary or a ministerial act.

    A discretionary duty involves the exercise of independent judgment in determining how or whether an act will be performed. As aptly stated in *Franklin County v. Malone*,

> Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful and where it is left to the will or judgment of the performer to determine in which way it shall be performed. However, an act is not necessarily taken

out of the class styled "ministerial" because the officer performing it is vested with a discretion respecting the means or method to be employed.[9]

On the other hand,

> An official duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts; that a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature.[10]

    Appellees argue that Spurlock's act was discretionary in nature because it required him to weigh the different courses of action available and then decide upon one instead of another. For example, Appellees point out that when confronted with a request for assurance of funding, there were a variety of ways Spurlock could have responded: he could have ignored the request, he could have referred the matter to the County Judge-Executive, he could have responded orally or asked someone else to respond, or he could have requested that all parties have a face-to-face meeting.

    Although Appellees are correct in noting that Spurlock could have responded in a variety of ways, the act giving rise to the claim of liability was not the method chosen for communication of the information, but the fact of the communication. Spurlock exercised his discretion to undertake a simple, straightforward, administrative task of conveying a positive or negative response to the important question of whether interim financing was in place. Once undertaken, this task involved no decision-making, such as whether to award the contract to Kea–Ham or whether to develop the particular site, and the task required no policy-making. Whether Spurlock conveyed the information via personal meeting, letter, telephone, e-mail, or

---

7.   KRS 154.50–340.

8.   Ky., 957 S.W.2d 195 (1997).

9.   *Id.* at 201 (*quoting Upchurch v. Clinton County*, Ky., 330 S.W.2d 428 (1959)).

10.   *Id.* (*quoting Upchurch v. Clinton County*, Ky., 330 S.W.2d 428 (1959)).

fax is not the act being analyzed; the act under review is the conveyance of unambiguous, concrete information, and this act was purely ministerial. It involved "execution of a specific act arising from fixed and designated facts,"[11] i.e., the communication of whether or not interim financing had been secured. Thus, Spurlock is not immune from suit for his conduct in this matter.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and this case is remanded to the Floyd Circuit Court for proceedings consistent with the views expressed herein.

COOPER, GRAVES, STUMBO, and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., files a dissenting opinion in which KELLER, J., joins.

JOHNSTONE, Justice, dissenting.

I respectfully dissent from the majority's holding that the ·Floyd County Development Authority is not shielded from liability by sovereign immunity and that Chairman Spurlock is not shielded from liability by official immunity.

This case revolves around the vital function of state encouraged economic development in this Commonwealth. Our legislature has deemed it appropriate and necessary to pursue these economic opportunities through a wide variety of programs, many of which are authorized by KRS Chapter 154. To emphasize the importance of this mission, the legislature has stated:

> The mission of the Commonwealth's economic development system shall be to achieve the best quality of life for all Kentuckians through long term strategic planning and implementation that fosters sustainable growth in jobs and incomes and enables communities, businesses, governments, and individuals to compete in the global market place.

KRS 154.01–020.

The legislature authorized the creation of "local development authorities" as one of the vehicles for achieving this goal. KRS 154.50–136. The Floyd County Development Authority was, pursuant to state statute, created by action of the Floyd County Fiscal Court. The nonprofit entity's purpose is to promote economic progress in the county by acquiring and developing land for industrial and commercial uses. Its board is appointed by the county judge-executive and is comprised of six residents of Floyd County who are community leaders serving without compensation.

The Authority receives its funding through loans and grants of state money. These funding arrangements are made by the Cabinet for Economic Development and are distributed pursuant to grant agreements with specific terms regarding their expenditure. KRS 154.20–010, et. seq.; 154.50–030.

In determining whether the Authority is entitled to the protection of sovereign immunity, the majority correctly applied the two-pronged test recently announced in *Kentucky Center for the Arts v. Berns*, Ky., 801 S.W.2d 327 (1991). However, I respectfully disagree with the majority's application of the test to the facts and circumstances presently before us.

The first prong of the *Berns* test relates to the "direction and control of the central State government." *Id.* at 331. In reaching its conclusion that the Authority fails this prong, the majority simply states that "although the Authority's board members are appointed by the County Judge–Executive, they serve for a term of years and have independent responsibility for making decisions for the Authority."

Unfortunately, the majority overlooks our analysis in *Withers v. University of Kentucky*, Ky., 939 S.W.2d 340 (1997), in which we implicitly acknowledged that control by the central State government does not refer to day-to-day management, but rather to Kentucky's long-term goals and

11. *Id.*

the mission of the undertaking. Surely, the Authority is much more controlled by state government than the University of Kentucky or a local school board. Moreover, the advancement of economic development is clearly a fundamental function of state government as compared with the promotion of the arts that we faced in *Berns.*

The second prong of the *Berns* test consists of whether the Authority is "supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." *Berns,* 801 S.W.2d at 331. There can be little doubt about this prong of the test. The Authority's support from the state treasury is outlined in KRS Chapter 154 and it is undisputed that the project at issue was to be funded by state money. I cannot find a requirement set forth in *Berns* which mandates exclusive reliance by governmental entities on the state treasury, a distinction the majority attempts to draw. Certainly the University of Kentucky could not have satisfied such a test in *Withers.*

Finally, I disagree with the majority's holding that Chairman Spurlock's act of sending a letter regarding interim financing was a ministerial rather than a discretionary act. It is well settled in this Commonwealth that if an official is engaged in discretionary activity, he or she is entitled to official immunity. When confronted with inquiries about funding, Chairman Spurlock could have responded in a number of ways, or refused to respond at all. The majority seems to concede that Spurlock exercised his discretion in deciding what response to make, but concludes that once the decision was made, his actions in conveying the information were purely ministerial. I would hold otherwise.

For the foregoing reasons, I would affirm the Court of Appeals in all respects.

KELLER, J., joins this dissent.