SNOW PALLET, INC., Plaintiff–Appellant,

v.

CLINTON COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY; Bill Shearer, individually; Steve Morgan, individually; Gary Little, individually, Defendants–Appellees.

No. 00–6437.

United States Court of Appeals, Sixth Circuit.

Sept. 4, 2002.

Before SILER, COLE, and CLAY, Circuit Judges.

## OPINION

COLE, JR., Circuit Judge.

Snow Pallet, Inc. appeals the district court's grant of summary judgment to Clinton County Industrial Development Authority ("CCIDA") and three of its directors ("the Individual Defendants"). For the reasons stated herein, we **REVERSE** in part and **AFFIRM** in part the district court's judgment.

## BACKGROUND

Defendant Clinton County Industrial Development Authority ("CCIDA") was established by the Clinton County Fiscal Court pursuant to the Local Industrial Authority Act. *See* KY. REV. STAT. ANN. §§ 154.50–301—154.50–346. Pursuant to that statute, CCIDA's mission is "to aid in the development and promotion of industrial sites, parks and subdivisions for accommodating industrial and commercial needs" in the Clinton County area. KY. REV. STAT. ANN. § 154.50–313. While CCIDA is a public entity, it is "a body politic and corporate with the usual corporate attributes, and in its corporate name may sue and be sued, contract and be contracted with and do all things reasonable or necessary to effectively carry out" its duties. KY. REV. STAT. ANN. § 154.50–316(2).

In January, 1998, Snow Pallet, seeking to expand its existing pallet business in Clinton County, applied for a loan in the amount of $355,000 from CCIDA. At a meeting of the CCIDA board on February 18, 2000, CCIDA tentatively approved a loan to Snow Pallet in the amount of $355,000, contingent upon CCIDA's "satisfactory review of additional information and a satisfactory collateral position." Snow Pallet alleges that Rudy Thomas, a CCIDA agent who assisted Snow Pallet with its loan application, also conveyed to Snow Pallet that the loan would be approved. In anticipation of receipt of the loan, Snow Pallet purchased additional equipment and hired additional personnel. On July, 22, 1998, however, CCIDA ultimately approved a loan for Snow Pallet in the amount of only $75,000.

On November 4, 1998, Snow Pallet filed suit against CCIDA in the United States District Court for the Western District of Kentucky, bringing claims for deprivation of property interest under color of state law and denial of due process, as well as state law claims for breach of contract, fraud, and breach of fiduciary duty. On April 21, 1999, CCIDA filed a Motion to

Dismiss or in the Alternative for Summary Judgment, arguing that CCIDA and its directors are immune from suit under Kentucky law. CCIDA also argued that Snow Pallet has no enforceable property interest in the approval of its loan application.

The district court exercised supplementary jurisdiction over Snow Pallet's state law claims and certified the issue of CCIDA's sovereign immunity to the Supreme Court of Kentucky. That court declined review. The district court, interpreting Kentucky state law in effect at the time, determined that CCIDA and its officers are immune from suit as a subdivision of Clinton County. The district court also determined that Snow Pallet possesses no enforceable property interest in its loan application to CCIDA. The district court granted CCIDA's motion for summary judgment.

Snow Pallet now appeals, bringing two issues for this court's review. First, Snow Pallet argues that in light of the recent decision of Supreme Court of Kentucky in *Kea–Ham Contracting, Inc. v. Floyd County Development Authority*, 37 S.W.3d 703 (Ky.2001), neither CCIDA nor its directors are entitled to sovereign immunity. Second, Snow Pallet urges that the district court erred in determining that it possesses no property interest in its promised loan from CCIDA. We consider these issues below.

### DISCUSSION

This court reviews a district court's grant of summary judgment *de novo*. *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir.1999). Under that standard, this court is required to affirm the grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making such a determination, this court must view the facts and reasonable inferences that may be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Where this court is required to determine issues that rest upon Kentucky law, we must apply Kentucky law in accordance with the controlling decisions of the Kentucky Supreme Court. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir.1999).

### A. State Sovereign Immunity

*CCIDA's Immunity*

■ Snow Pallet appeals the district court's determination that CCIDA and its directors are immune from suit under state law. The district court reasoned that because counties are immune from suit under Kentucky law, CCIDA, as an arm of the county, shares in this immunity. Joint Appendix ("J.A.") at 222.

While it is true that Kentucky law provides that county agencies can share in the county's immunity from suit, this is only so where the county agency (1) is "under the direction and control of the central state government"; and (2) is "supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." *Ky. Ctr. For the Arts Corp. v. Berns*, 801 S.W.2d 327, 329 (Ky. 1991). The Supreme Court of Kentucky has recently determined that county development authorities created pursuant to the Local Industrial Authority Act do not satisfy these criteria, and thus are not immune from suit under Kentucky law.

*Kea–Ham Contracting, Inc. v. Floyd County Dev. Auth.*, 37 S.W.3d 703, 706 (Ky.2001) ("Application of the two-part *Burns* test to the [Floyd County Development Authority] indicates that it is a municipal corporation unprotected from suit by the shield of sovereign immunity."). The *Kea–Ham* court reasoned that the development authority was not under the direction and control of the state because its directors enjoy "independent responsibility for making decisions for the Authority." *Id.* The court also explained that because the development authority is empowered to receive grants from other federal agencies, borrow money on its own credit, issue bonds, and generate money through the purchase and sale of real estate, it is not considered to be supported by monies from the State treasury. *Id.* at 707. That the development authority at issue in *Kea–Ham* received funding from the state, the court found, is irrelevant, even if a particular project was funded exclusively with state funds. *Id.* ("Government entities are not protected by sovereign immunity on one project without protection on another by virtue of the source of funding for the particular project."). The *Kea–Ham* court determined that it is the existence of alternatives to state funding, rather than an absence of state funding, that renders an agency independent from the state for the purposes of sovereign immunity. *Id.*

Like the development authority at issue in *Kea–Ham*, CCIDA is governed by a board of six directors who exercise independent decision-making authority over CCIDA's activities. Moreover, CCIDA is also empowered to receive funding from alternate sources and can borrow and raise funds using its own assets. Indeed, the record reflects that CCIDA receives a considerable portion of its funding from the U.S. Department of Agriculture through a Rural Enterprise Grant. While the defen-

dants press that CCIDA also receives state funding, that fact is irrelevant here, as the record clearly indicates that CCIDA has access to sources of funding other than that of the state. *See Kea–Ham*, 37 S.W.2d at 707.

Given that CCIDA's structure is nearly identical to that of the development authority considered in *Kea–Ham*, that case is controlling here. We thus conclude that the district court erred in determining that CCIDA is entitled to immunity and reverse its judgment as to this issue.

*The Individual Defendants' Immunity*

■ Snow Pallet also argues that the district court erred in concluding that the Individual Defendants, by virtue of their association with CCIDA, are necessarily immune from suit under Kentucky law. We agree.

■ Kentucky law provides that public employees sued in their individual capacities "are entitled only to official immunity for their discretionary acts occurring within the scope of their employment and to no immunity for their ministerial acts." *Ky. Bd. of Claims v. Harris*, 59 S.W.3d 896, 898–99 (Ky.2001). Therefore, a public employee is not entitled to immunity simply by virtue of his employment; rather, a court is required to determine whether the employee's acts were discretionary or ministerial in nature. *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky.2001) ("[W]e have continued to recognize the distinction between discretionary and ministerial acts and have held that the wrongful performance of a ministerial act can subject the officer or employee to liability. . . ."); *Kea–Ham*, 37 S.W.3d at 707 ("Thus the decisive issue here is whether Spurlock, by sending the letter assuring that interim financing was in place, performed a discretionary or a ministerial act.").

Because these holdings require a determination of whether the actions of the Individual Defendants were either ministerial or discretionary, and because the parties dispute the facts surrounding this question, the district court erred in granting summary judgment to the defendants on this claim. We thus reverse the district court's judgment and remand the issue for a determination of whether the Individual Defendants' acts were either discretionary or ministerial in nature, and by extension, entitled to official immunity.[1]

### B. Denial of Due Process

■ Finally, Snow Pallet contends that, in granting summary judgment to defendants on its due process claim, the district court erred in concluding that Snow Pallet possesses no property interest in the loan that CCIDA allegedly approved. We find this claim to be without merit.

This court has held that a plaintiff possesses a property interest in only those benefits to which he is legitimately entitled. *Shaner v. United States*, 976 F.2d 990, 994 (6th Cir.1992) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). To that end, we have concluded that a loan applicant can assert a property interest in a loan only where

the "loan is approved and a contractual right results." *Id.* at 995 (citing *Nelson v. United States*, 16 Cl.Ct. 510 (1989)). The essential terms of a loan agreement relevant to the existence of a contractual right include "the amount of money to be loaned, the time within which the loan will be made and the term of such loan, i.e., whether the note will be payable on demand or upon a date certain." *Louden v. Fed. Land Bank*, 106 B.R. 109, 112 (E.D.Ky.1989).

Snow Pallet argues that the record indicates that the terms of the loan were definite and agreed upon, thereby creating a property interest. Snow Pallet relies upon three facts for support for this contention. First, Snow Pallet points to the affidavit of its president, Gleta Stalcup, who declared that Rudy Thomas, an alleged agent of CCIDA, advised her that the loan, in the amount of $355,000, would close soon and that Snow Pallet could proceed with its expansion plans. Snow Pallet argues that this demonstrates that the loan was in fact going to be approved. Second, Snow Pallet relies upon two statements in a CCIDA document that references CCIDA's loan policies. One statement includes loan rates for the various loans provided by CCIDA. The other statement indicates that "[l]oans may be made for a period not to exceed the (10) years." Snow Pallet argues that these two statements indicate the definiteness of the terms of the loan agreement, thereby creating a property interest.

---

1. The defendants argue that, notwithstanding the fact that the district court did not reach the merits of the plaintiffs' state law claims, the "uncontroverted facts" mandate this court's dismissal of these claims. We disagree. Even if the facts at issue here were not in dispute, which does not appear to be the case, this court is not at liberty to determine issues not previously confronted by the district court. *See, e.g., N. Texas Production*

*Credit Ass'n v. McCurtain County Nat'l Bank*, 222 F.3d 800, 812 (10th Cir.2000) ("The district court did not address this claim in its order granting summary judgment for the defendants, and we decline to consider it on appeal. As a general rule, we do not consider issues not passed on below, and it is appropriate to remand the case to the district court to address an issue first.").

The district court rejected Snow Pallet's argument and found that these facts were not indicative of the creation of a contractual right. We agree. Construed in the light most favorable to Snow Pallet, these facts do not demonstrate an agreement between Snow Pallet and CCIDA as to the precise terms of the loan. In order for a loan offer to be enforceable, the offer "must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Klein v. Citizens Union Nat. Bank*, 281 Ky. 650, 136 S.W.2d 770, 773 (1940) (internal citations omitted). Here, Thomas's statement that the loan would close soon, even if made, provides no evidence of a specific date on which loan monies would be disbursed and lacks the requisite specificity to create a contractual obligation. Moreover, the general policy statement by CCIDA regarding the maximum term of its loans is not an indicator of an agreement between Snow Pallet and CCIDA regarding the term of the loan. The same can be said for CCIDA's general policy statement as to interest rates. Because Snow Pallet has failed to demonstrate the specific agreed-upon terms of its loan from CCIDA, we cannot conclude that there is sufficient evidence to demonstrate a property interest in the loan. We thus affirm the district court's judgment as to this claim.

## CONCLUSION

For the aforementioned reasons, we **REVERSE** the district court's judgment as to the sovereign immunity of CCIDA and **REMAND** for a determination of Snow Pallet's claims on the merits. We further **REVERSE** the district court's judgment as to the immunity of CCIDA's directors and **REMAND** for a determination of the Individual Defendants' official immunity pursuant to *Ky. Bd. of Claims v.*

*Harris,* 59 S.W.3d 896 (Ky.2001). We **AFFIRM** the district court's judgment as to the due process claim.