NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0335n.06

No. 19-4258

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 18, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARIE JOSEPH, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| RONALD JOSEPH, GREGORY JOSEPH, GEORGE JOSEPH, RICHARD JOSEPH, and RONALD JOSEPH, JR., | ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS, WHITE, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Marie Joseph ("Marie") appeals the grant of summary judgment to her brother Ronald Joseph ("Ron") in this action concerning access to corporate books and records.

In 2016, Marie filed suit against Ron over disputes concerning Columbia Oldsmobile Company ("Columbia"), a closely held Ohio corporation founded in 1938 by their father, George Joseph. Marie alleged that Ron manipulated the affairs of Columbia, oppressed her as a minority shareholder, and violated his fiduciary duties by participating in related-party transactions. The additional claim involved here—that Ron denied her access to Columbia's corporate books and records—was bifurcated from her other claims.

Ron and Marie filed cross-motions for summary judgment on the corporate-records claim. The district court granted Ron's motion and denied Marie's cross-motion. For the reasons that follow, we **AFFIRM**.

**I.**

**A.**

On October 12, 2015, Marie's prior counsel emailed a request for corporate records pursuant to Ohio Rev. Code §1701.37 to counsel for Ron and Columbia ("2015 Records Request"). Marie's counsel stated in the email that Marie was concerned that Columbia had failed to account for income it had received from its subsidiaries and holdings, and that Ron was breaching his fiduciary duties by failing to pay dividends and usurping corporate opportunities, and was derelict in his duties to minority shareholders. The email continued:

> [P]ursuant to Ohio Revised Code §§ 1701.37 and 1701.38, I hereby request on Marie's behalf, copies of the following Columbia books and records:

1. The "complete books and records of account, together with minutes of the proceedings of Columbia's shareholders, directors, and committees of the directors." This request seeks, among other things:
   a. Copy of the ground lease for the 5th and Sycamore (6 parcels of land);
   b. The financials of Columbia Motors Acceptance Corporation (2005-2015);
   c. The financials of Joseph Chevrolet (2005-2015);
   d. Financial records (2005-2015) and appraisals of the following lots owned by Columbia: (i) 813 Sycamore St, (ii) 7th and Sycamore (11 parcels); and (iii) 415 Court St.;
   e. The financials (2005-2015) for 716 Main St.;
   f. The appraisal, if any, of 3449 St. John's Place owned by Columbia;
   g. Financial records (2005-2015) of rent received on 9750 and 9678 Montgomery Rd.;
   h. The financial records (2005-2015) for Columbia Hyundai;
   i. The financial records (2005-2015) for Columbia Acura; and
   j. Financial records (2005-2015) regarding finance and insurance ("F&I") monies of all dealerships owned by Columbia.
2. The records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992;
3. Any Appraisals of Columbia stock used to reach the valuation of Najla's[1] shares at $17,885.39 and $16,991.12 per voting share and non-voting share respectively;

---

[1] Najla is Marie and Ron's mother.

4. A copy of the Stock Ledger for Columbia;

5. Financial statements, including balance sheets containing a summary of the assets, liabilities, stated capital, if any, and surplus (showing separately any capital surplus arising from unrealized appreciation of assets, other capital surplus, and earned surplus) for each year from 1992 to the present; and

6. All statements of profit and loss and surplus, including a summary of profits, dividends or distributions paid, and other changes in the surplus accounts, for the period 1992-present.

R.244-2, PID 17873 –74.

> In response to the records request, counsel for Ron and Columbia replied:
>
> A substantial amount of the information you requested is either not available or is within the public domain. In particular, I refer to the real estate appraisals and related materials you requested. As to the other information set forth in your emails, I have no authorization to respond or otherwise provide these items.

R.240-2, PID 17720.

After Marie initiated this lawsuit, Ron provided Marie with copies of certain of Columbia's corporate records through discovery. For example, Ron produced copies of: Columbia Automotive Inc.'s general ledger, Columbia Development's general ledger, the financial statements of Columbia Automotive and Columbia Oldsmobile Company, Columbia Oldsmobile Company's tax returns, Columbia Oldsmobile Company's stock registers and shareholders' lists, and Columbia stock certificates.

However, Ron has refused to provide Marie with access to the following: Columbia's "source documents," which Marie defined as "document[s] such as . . . receipt[s] and invoice[s] or . . . purchase order[s]" that "support[] or back[] up a given transaction," R.242, PID 17795; access to Columbia's "actual" general ledgers, which Marie defined as Columbia's general ledger "as it is actually maintained in Columbia Automotive, Inc.'s system," R.243-1, PID 17834; and access to Columbia's "original" stock ledgers, stock certificates, and shareholder records, R.250, PID 18421. Although Ron has permitted Marie to inspect the original copies of Columbia's stock

certificates, he has conditioned that access on Marie agreeing to various confidentiality restrictions.

During a "meet and confer" conference on November 8, 2018, Marie's counsel told Ron's counsel that Marie sought to review "source documents" for the transactions listed in a spreadsheet that Marie's counsel first sent to Ron's counsel via email on September 5, 2018. R.238, PID 17650–51. In that September 5, 2018, email, Marie's counsel inquired whether Ron's counsel would be willing to agree to various stipulations regarding the transactions listed in the spreadsheet, which she planned to challenge at trial. Marie's counsel again sent the spreadsheet to Ron's counsel on November 20, 2018.

During the pendency of this lawsuit, Marie made three additional records requests to Ron and Columbia; the first on April 14, 2017, the second on January 18, 2018, and the third on April 20, 2018. Marie also filed a motion for equitable relief seeking access to Columbia's books and records in the Court of Common Pleas of Hamilton County, Ohio on July 30, 2019. None of these requests are at issue in this appeal.

**B.**

Marie filed this action asserting claims for breach of fiduciary duties, access to corporate records, and entitlement to an accounting against Ron. Marie then filed an amended complaint asserting an additional claim for fraud and concealment against Ron, a claim for fraudulent breach of fiduciary duties against Ron and his sons Gregory Joseph, George Joseph, Richard Joseph, and Ronald Joseph, Jr. ("Ron's Sons"), and a faithless-servant claim against Ron's Sons. All claims asserted against Ron's Sons were dismissed on summary judgment. The district court subsequently granted Ron's motion for separate trial, directing that Marie's breach-of-fiduciary-

duties claim be tried first, with her corporate-records and accounting claims to be tried at a later date.

After the jury trial on Marie's breach-of-fiduciary-duties claim resulted in a verdict in favor of Ron, the district court issued an order dismissing the accounting claim with prejudice on the ground that it was "merely a potential remedy for [Marie]'s breach of fiduciary duties claim." R.215, PID 16036–37. The district court also ordered Ron and Marie to meet and confer to file a proposal for resolving the corporate-records claim. Ron and Marie subsequently filed a joint proposal for resolving the corporate-records claim.

The district court then directed Ron and Marie to file "pleadings" addressing what documents responsive to Marie's request for corporate records had already been produced in discovery. R.230, PID 17444–46. The court held a status conference at which it determined that Marie's corporate-records claim "shall proceed to a bench trial." Minute Entry and Notation Order dated May 14, 2019. In its order, the court stated that "only those corporate records requests submitted prior to the filing of" the original complaint on April 12, 2016, would be tried. *Id.* The court set a briefing schedule for the filing of trial briefs.

The district court later held an additional status conference at which it determined that Marie's corporate-records claim implicated "threshold questions of law." Minute Entry and Notation Order dated July 19, 2019. It therefore canceled the trial and granted the parties leave to file cross-motions for summary judgment on the corporate-records claim. The parties filed cross-motions, and the district court granted Ron's motion and denied Marie's cross-motion. Marie timely filed a notice of appeal.

**II.**

We review a district court's summary judgment determination de novo, *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021), viewing all evidence in the light most favorable to the non-moving party and drawing all justifiable inferences in that party's favor, *Carhartt, Inc. v. Innovative Textiles, Inc.*, 998 F.3d 739, 742 (6th Cir. 2021). Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Jordan*, 987 F.3d at 542 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012) (internal quotation marks omitted)). That is, "to defeat a motion for summary judgment, the evidence must be such that a reasonable jury could return a verdict for the non-moving party." *Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted)).

**A.**

We begin by reviewing the district court's determination that Marie's 2015 request for "copies" of Columbia's "complete books and records of account" did not entitle her to copy and inspect the relevant "source documents." *See* R.250, PID 18428. Marie contends that this was error because Ohio law accords shareholders expansive rights to inspect and copy corporate records, including the "documents underlying the central accounting books." Appellant Br. at 13–16 (emphasis omitted). She also notes that her request was specific and particularized, as she provided a spreadsheet of specific transactions for which she sought to inspect and copy the underlying source documents.

The district court did not err in holding that the 2015 Records Request did not entitle Marie to copy and inspect the underlying source documents. Section 1701.37(C) of the Ohio Revised Code provides in relevant part that

> [a]ny shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof. . . .

Ohio Rev. Code Ann. § 1701.37(C) (West).

To make out a "*prima facie* case" for relief under this section, the plaintiff must establish that "1) there was a demand for access to the documents, 2) the demand was in writing[,] and 3) there was a specific purpose stated in the writing." *Hotchkiss v. GenBanc, Inc.*, No. 93-OT-016, 1994 WL 39065, at *2 (Ohio Ct. App. Feb. 11, 1994). In granting Ron's motion for summary judgment and denying Marie's cross-motion, the district court explained that "the issue before the Court is not whether Plaintiff generally possesses the right to access corporate records, but whether Plaintiff specifically asserted that right in the 2015 Records Request, such that Defendant's refusal to comply constituted a violation of law." R.250, PID 18423. Thus, this appeal concerns the first element of a corporate-records claim under § 1701.37(C)—whether Marie made a proper "demand" for the source documents at issue here.

Marie relies on *Cincinnati Volksblatt Co. v. Hoffmeister*, 56 N.E. 1033 (Ohio 1900), *William Coale Development Co. v. Kennedy*, 170 N.E. 434 (Ohio 1930) and *No-Burn, Inc. v. Murati*, C.A. No. 25495, 2011 WL 5188063 (Ohio Ct. App. Nov. 2, 2011), for the proposition that the statutory phrase "books and records of account" broadly encompasses underlying source documents. However, as the district court correctly noted, while generally recognizing that shareholders have the *right* to inspect a broad range of corporate records under Ohio law, these

cases do not answer the precise issue presented in this appeal: what constitutes a proper "demand" for access to documents under § 1701.37(C). And it appears that no decision of the Ohio courts has clarified the form or content required to make a proper request for books and records under § 1701.37(C).

Although the cases Marie cites do not settle whether a reference to "books and records of account" in a written demand pursuant to § 1701.37(C) would entitle a shareholder to the underlying source documents, what is clear is that the plain terms of the 2015 Records Request did not include the words "source documents" or "receipts, invoices or purchase orders," as she later defined the term. R.240, PID 17709. Nor does her records request reference any specific transactions.

Marie argues that regardless whether the 2015 Records Request was specific enough to include the underlying source documents in the first instance, she provided the requisite specificity when her counsel sent Ron's counsel the spreadsheet of transactions in 2018. This argument is unavailing. The plain terms of § 1701.37(C) require a "written demand." Ohio Rev. Code § 1701.37(C). Marie made that written demand in 2015, and that demand did not mention specific transactions or request any "source documents" underlying those transactions.

Marie emphasizes the importance of the timing and context of her subsequent identification of transactions in the 2018 spreadsheet, noting that the 2015 Records Request was made by her prior counsel at a time when she did not have a well-developed understanding of Columbia's finances or what documents were kept where and how. Yet she does not explain why, once she learned this information through discovery, she could not have made another written demand properly identifying the particular transactions and underlying source documents she seeks. In fact, Marie has made three separate, adequately framed written requests for specific types of

records during the pendency of this litigation, as well as a motion for equitable relief in state court seeking access to Columbia's books and records.

Marie argues that *Dukich v. Erico Products, Inc.*, No. 53264, 1987 WL 13033 (Ohio Ct. App. June 18, 1987) (per curiam), which the district court cited in its summary-judgment order, actually supports her position. In *Dukich*, the Ohio Court of Appeals held that the trial court did not err in limiting the shareholder's right of inspection pursuant to § 1701.37 to documents he specifically identified at an initial court hearing. 1987 WL 13033, at *1. The trial court declined to permit the inspection of documents regarding which the shareholder said he "was not sure about exactly what he wanted to see." *Id.* Similarly, it declined to grant the shareholder's request for "random access" to the accounting records for all of the corporation's financial statements. *Id.* According to Marie, *Dukich* suggests that a shareholder can first make a broad request for a certain category of documents and subsequently "narrow and focus the inquiry as the process goes forward." Appellant Br. at 22. An alternative approach, she contends, would encourage a "fragmented approach based on multiple requests that renders the shareholder access granted by R.C. § 1701.37 illusory." *Id.* at 23.

*Dukich* does not help Marie here. Although, like here, *Dukich* involved a corporate-records request pursuant to § 1701.37, the issue in that case was the specificity of the shareholder's representations to the court regarding the documents to which he sought access. *See Dukich*, 1987 WL 13033, at *1. *Dukich* did not discuss—much less decide—whether a written demand for access to corporate records may consist of two (or multiple) separate writings, or whether a shareholder may submit an initial, broadly worded request followed by a written communication narrowing or more specifically identifying the corporate records sought. The court simply noted that "[t]he shareholder may have submitted a written, more specific demand to the court, but this

list is not in the record." *Id.* Here, Marie did not make such a specific demand in the 2015 Records Request for the source documents underlying the challenged transactions.

To the extent Marie argues that her "subsequent identification of specific transactions for which she sought to inspect and copy Source Documents," Appellant Br. at 18, itself constituted a demand for corporate records under § 1701.37(C), we disagree. The spreadsheet of transactions Marie references was first sent by Marie's counsel to Ron's counsel in an email asking whether Ron would agree to various stipulations regarding those transactions in anticipation of trial. There was no "demand for access" to the source documents underlying those transactions, and there was no "specific purpose stated in the writing." *Hotchkiss*, 1994 WL 39065, at *2. Therefore, Marie did not make a proper request for the underlying source documents through that communication. Although Marie also notes that her counsel again sent the spreadsheet in response to Ron's request at the parties' meet-and-confer conference, she merely references the same spreadsheet of transactions without indicating whether there was any corresponding request pursuant to § 1701.37(C) in the email.

Moreover, we are not convinced by Marie's argument that the district court's approach would render a shareholder right to corporate records illusory. As an initial matter, she does not explain why submitting multiple records requests would render the right illusory. Marie herself apparently did not consider this to be the case, having made three separate records requests and a motion for equitable relief during the course of this litigation. And, finally, the district court properly recognized that shareholders have broad rights to inspect and copy corporate records under Ohio law; they merely have to make a proper demand pursuant to § 1701.37(C), which Marie failed to do here with respect to the records at issue.

Marie also challenges the district court's determination that because she only requested "copies of" the source documents, she was not entitled to inspect them as well.[2] She argues that the law does not favor the use of "magic words" and that "[t]he right to take copies from the records follows as an incident to the right to inspect." Appellant Br. at 23–24 (quoting *Volksblatt*, 56 N.E. at 1035). That is indeed the law, but the fact remains that Marie did not request to inspect the documents; she simply asked for copies.[3] Regardless whether the right to copy flows from the right to inspect—and the district court acknowledged that *Volksblatt* and other cases recognize broad shareholder rights to corporate records—the issue in this case, as Marie acknowledges, is the proper form and content of a records request made pursuant to § 1701.37(C), a question that *Volksblatt* does not answer.[4]

---

[2] The district court observed that many of the cases on which Marie relied referred to "requests for in-person inspection and subsequent copying" and that Marie merely requested "copies of" Columbia's documents rather than in-person inspection of them. R.250, PID 18427. It found that the "generalized" nature of Marie's request further supported its determination that Ron could not be held liable under § 1701.37(C).

[3] We further note that in each of the three extrajudicial requests for records that Marie made during the pendency of this litigation, she explicitly sought "the right to inspect and copy" various documents. *See* R.233-2, PID 17488; R.233-3, PID 17489; R.233-4, PID 17490. If a request for mere "copies" is sufficient to afford a shareholder the right to inspect the documents as well, we are left to wonder why Marie nevertheless felt it necessary to explicitly request the right to inspect Columbia's books and records in her subsequent requests.

[4] That is not to say that Ohio shareholders are wholly without guidance regarding how to formulate a proper records request. The following template, available on Westlaw, is an example of a records request that adequately seeks permission to both inspect and copy corporate books and records:

*[Letterhead]*

*[Date]*

*[Address and salutation]*

I am the owner of ___ shares of the common stock of the corporation.

Pursuant to Ohio Revised Code § 1701.37(C), I request that the corporation make the following records available for inspection by me or my attorney, *[name]*, within ___ days following receipt of this letter:

*[List of records to be examined.]*

The inspection will be undertaken during the regular business hours of the corporation or made available on a reasonably accessible electronic network. Copies or extracts of the records may be made.

Because Marie has not demonstrated that, on a favorable view of the disputed facts, Ron was required to permit Marie to inspect and copy the source documents pursuant to the 2015 Records Request, we affirm the district court's resolution of this issue.

**B.**

As noted, in her 2015 records request, Marie requested, among other documents, "copies of the following Columbia books and records":

> 1. The "complete books and records of account, together with minutes of the proceedings of Columbia's shareholders, directors, and committees of the directors."

R.244-2, PID 17873.

Marie did not demand access to the "original" books and records, nor did she request access to or ask to "inspect" the original books and records in person. Although Marie again relies on *Volksblatt* for the proposition that the right to copy flows from the right to inspect, as with the underlying source documents, the question here is not whether, as a general proposition, there is a right to copy corporate records or whether that right flows from the right to inspect documents. Rather, the question is whether a written request for *copies* of corporate records entitles the shareholder to inspect the original documents based on that request. As discussed above, *Volksblatt* did not consider the form or specificity required of a demand under § 1701.37, and it is undisputed that Marie did not ask to "inspect" the general ledgers. Marie's position here is

---

The purpose of the inspection is to enable me to ascertain the value of my interest in the corporation, to obtain information on the details of the corporation's business and status of its affairs, and to determine if there are any improprieties in the management or operation of the corporation.

Please reply to this request immediately.

Yours very truly,

*[Signature of shareholder]*

§ 3:16. Request for roster of shareholders; demand to inspect records, Oh Forms & Transactions § 3:16.

essentially that Ron should have granted her access to the general ledgers that she did not request in her § 1701.37 demand. The district court did not err in concluding that Ron was not obligated to do so.

Moreover, regardless whether the right to copy corporate records flows from the right to inspect, the record here establishes that Marie was provided with copies of Columbia's complete general ledger from 2008 to 2017. James C. Frooman, co-counsel for Ron, stated in a declaration that Columbia Automotive and Columbia Development's general ledgers for the years 2008 to 2017 were produced to Marie in the form of text-searchable PDFs. Mr. Frooman declared, moreover, that the PDFs "accurately reflect" the two companies' ledgers for the years 2008 to 2017. R.244-3, PID 17877. Marie does not dispute that she received *copies* of all of the general ledgers from 2008 to 2017. Instead, she disputes Ron's argument that the copies of the general ledger reflect "all of the general-ledger information she seeks to examine on Columbia's live accounting systems" and that they reflect the general ledger information as it is maintained in Columbia's accounting software. Reply Br. at 14 (quoting Ron Br. at 34), 15.

In this regard, Marie contends that Columbia's general ledgers are "living, breathing documents," *id.* at 15, and that they have an inherent functionality that would allow Marie to obtain a more complete understanding of the related-party transactions and a "path of entries" to access information about the underlying source documents, Appellant Br. at 26. Ron disputes this, arguing that any source documents are stored on-site at the Columbia Automotive dealerships rather than in the accounting software. In response, Marie asserts that an issue of material fact exists as to whether the general ledgers provide such access to the underlying source documents. But to the extent such a dispute exists, it is not "material" because Marie did not request access to the general ledgers in the first instance. *See Hotchkiss*, 1994 WL 39065, at *2 (*prima facie* case

for access to corporate records requires written demand); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) ("A fact is material if it 'might affect the outcome of the suit under the governing law[.]'") (quoting *Anderson*, 477 U.S. at 248).

For these reasons, we affirm the district court's ruling that Marie's 2015 records request did not require Ron to provide her access to Columbia's general ledgers.

**C.**

Finally, we review the district court's determination that Marie was not entitled to access Columbia's stock ledgers and stock records pursuant to the 2015 Records Request. Marie reiterates that the right to copy is incident to the right to inspect, and states that she has only received computer-generated printouts of the stock ledger. In response, Ron contends that Marie received exactly what she requested—copies—and that her claim is moot in light of his offer of the opportunity to inspect the stock ledger and certificates in person.

As a preliminary matter, we note that this claim is not moot. We have stated that "[t]o moot a case or controversy between opposing parties, an offer of judgment must give the plaintiff *everything* [s]he has asked for as an individual. That means [her] 'entire demand[.]'" *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 574 (6th Cir. 2009)) (emphasis in original). By the same token, "[a]n offer limited to the relief the *defendant* believes is appropriate does not suffice." *Id.* (emphasis in original). "The question is whether the defendant is willing to meet the plaintiff on h[er] terms." *Id.* (citing *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005)).

Ron argues that Marie's stock-ledger-and-certificates claim is moot because he "already willingly offered Marie the equitable relief she seeks, i.e., the opportunity to inspect the stock ledger and certificates in-person." Ron Br. at 31. Marie, on the other hand, contends that Ron has

improperly conditioned her access to the stock ledger and certificates on "overly broad and unduly burdensome confidentiality restrictions." Reply Br. at 17 n.7. Regardless of the merits of her underlying claim, because Marie objects to these restrictions, the claim is not moot. *See Hrivnak*, 719 F.3d at 567 (asking what the plaintiff demands, rather than the relief to which she is legally entitled).

Turning to the substance of her claim, Marie sought, in the 2015 Records Request, "copies of" the following documents: "records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992," as well as "[a] copy of the Stock Ledger for Columbia." R.244-2, PID 17873–74. With respect to the stock ledger, by its very terms, the 2015 Records Request sought only a "copy" of that document. Much like her request for Columbia's actual general ledgers, Marie did not frame her request as one for the "original" stock ledger, nor did she request the right to inspect or access the original stock ledger. Indeed, the word "inspect" does not appear anywhere in Marie's 2015 records request. Marie's invocation once again of *Volksblatt* in this context is unavailing, as it does not answer whether Marie's request for "copies" of the stock ledger was a sufficient written demand entitling her to inspect the original stock ledger. Finally, Marie does not dispute that she received copies of the stock ledger, which her counsel moved to have admitted at trial as a joint exhibit.

We reach the same conclusion with respect to Marie's request regarding the stock certificates. Ron notes that Marie has received "true and accurate copies of every issued and cancelled stock certificate of Columbia dating back to 1953." Ron Br. at 30 (emphasis omitted). Marie claims that she has not been permitted to inspect and copy the originals, which would allow her to determine their accuracy. Again, Marie's right to both inspect corporate records and verify

their accuracy is not in question. The issue here is whether Marie requested such access in the 2015 Records Request. She did not. That request was for

> . . . *copies* of the following Columbia books and records:
>
> […]
>
> 2. The records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992;
>
> […]

R.244-2, PID 17873 (emphasis added).

As with her requests regarding the general ledgers and stock ledger, Marie did not frame her request as one for the "original" stock certificates, nor did she request the right to inspect or access the original stock certificates.

For these reasons, we conclude that the district court did not err in determining that Marie's 2015 records request did not entitle her to inspect Columbia's original stock ledger and stock certificates.

**D.**

Marie argues that Ron's and Ron's Sons' refusal to allow her to inspect and copy Columbia's corporate records constitutes an independent breach of fiduciary duties.[5] She asks this

---

[5] Ron's Sons are not proper parties to this appeal. To be a proper party to an appeal, a defendant must be named as a defendant as to the claims being appealed. *See Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1089 (9th Cir. 2019) ("The only claims at issue in this appeal are Counts I and II. Because GIAA was not named in either count, it is not a proper party to this appeal and therefore must be dismissed."); *see also Sluder v. United Mine Workers of Am., Int'l Union*, 892 F.2d 549, 551 n.3 (7th Cir. 1989) ("The only defendants named in Counts I and II were District 12, John Doe, and Tome Roe. Consequently, although the notice of appeal also indicates an appeal against the International Union, this union was not a named defendant in Counts I and II and thus is not a party to this appeal.").

Ron's Sons are not named as defendants in the original complaint, which is where Marie's corporate records claim appears. Only Ron is, and the allegations specifically pertaining to that claim only reference Ron. The district court recognized as much in its summary-judgment order disposing of this claim, stating that "[t]he access to corporate records claim at issue here is asserted in the complaint solely against Ronald Joseph." R.250, PID 18417 (underlining in original). Although Marie notes that her amended complaint incorporated all of the allegations in her original complaint, that does not help her, as Ron's Sons were not named as defendants or alleged to have prevented her from accessing Columbia's corporate records in the original complaint.

court, if it concludes that the district court erred in ruling for Ron on her corporate-records claim, to "reverse the District Court's ruling disposing of Marie's claims for breaches of fiduciary duties based on the Defendants' refusals to permit access in responses to her 2015 Records Requests." Appellant Br. at 34. We decline the invitation to do so.

As an initial matter, we have already concluded that the district court did not err in granting summary judgment to Ron on the corporate-records claim and denying Marie's cross-motion.

Marie herself readily acknowledges—and Ron does not dispute—that the district court did not address in its pre-trial summary-judgment orders whether the refusal to permit Marie to inspect and copy corporate records constituted a breach of fiduciary duty. Moreover, as Ron correctly notes, Marie did not raise her combined corporate-records/fiduciary-duty claim in her summary judgment briefing after the trial on her fiduciary-duty claim, and the district court thus had no occasion to address this claim in its order granting Ron's motion for summary judgment on the corporate-records claim.

Although ordinarily the proper course of action would be for this court to remand this claim for consideration by the district court, we decline to do so here given the somewhat unique procedural posture of this claim. The district court's bifurcation order left the combined fiduciary-duty/corporate-records claim to be litigated after trial along with Marie's statutory corporate-

---

Marie notes that in the amended complaint's prayer for relief, she sought equitable relief against Ron's Sons requiring that they permit her to inspect and access Columbia's corporate records. But "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Marie argues, nevertheless, that she named Ron's Sons in paragraph 141 of the amended complaint, in which she alleges that they violated their "duty of disclosure" by refusing to allow her to inspect and copy Columbia's corporate records. As further discussed in this section, however, Marie's combined corporate-records/fiduciary-duty claim, which this factual allegation supports, is not properly before this court because Marie did not adequately present the claim to the district court. *See Snow Pallet, Inc. v. Clinton Cnty. Indus. Dev. Auth.*, 46 F. App'x 787, 791 n.1 (6th Cir. 2002).

We therefore hold that Ron's Sons are not proper subjects of this appeal.

records claim.  In that order, the court noted that the jury "<u>cannot</u> resolve the equitable claims and/or order equitable relief."  R.175, PID 11732 (underlining in original).  It continued:

> Marie argues that Ron, Sr.'s refusal to allow Marie access to corporate records is itself a breach of a fiduciary duty that should be presented along with her legal claim.  This argument is not availing.  Marie's pleading and responses to Ron, Sr.'s discovery requests confirm that she is only seeking (and has only sought) <u>equitable</u> relief for Ron, Sr.'s alleged refusal to allow access to corporate records.  She has not sought legal damages on her corporate records claim.

*Id.*, PID 11733–34 (underlining in original).

The district court's order did not resolve the question whether Ron's alleged refusal to permit Marie to inspect the corporate books and records constitutes a breach of fiduciary duty.  It determined only that, because Marie merely sought equitable relief for her corporate-records claim, it should not be presented at trial alongside her breach-of-fiduciary-duty claim, for which she sought damages.  Marie therefore should have presented her combined claim alongside her statutory corporate-records claim after the trial against Ron concluded.  Although she raised her combined claim in a footnote in her responsive "pleading" addressing her corporate-records claim and again in a footnote in her trial brief, she did not again raise this claim—in a footnote or otherwise—in her summary-judgment briefing on the remaining corporate-records claim.  As a result, the district court unsurprisingly did not address or otherwise resolve the combined fiduciary-duty/corporate-records claim in granting Ron's motion for summary judgment and denying Marie's cross-motion.  Because Marie failed to address or develop her combined claim in her post-trial summary-judgment briefing, we deny relief as to that claim.

**III.**

For the foregoing reasons, we **AFFIRM** the district court's order granting Ron's motion for summary judgment on the corporate records claim and denying Marie's cross-motion on the same.